In re Rickie L. SIEGFRIED, individually and as an officer or director of Diamond Head Development, Inc. (EIN 84–1093730); Siegfried Construction, Inc. (EIN 84–1034897); Siegfried Construction Framing, Inc. (EIN 84–1200961); and Diamond Development, Inc. (EIN 84–1267965) SS# 436–86–4388, Debtor.

Bankruptcy No. 96–25157–SBB.

United States Bankruptcy Court, D. Colorado.

April 24, 1998.

582

Joan M. Norman, Brotzman, Buchholz & McDowell, Boulder, CO, for Debtor.

Howard J. Beck, Beck and Cassinis, P.C., Aurora, CO, for James P. Trott, Jr.

## MEMORANDUM OPINION AND ORDER

SIDNEY B. BROOKS, Bankruptcy Judge.

THIS MATTER comes before the Court on the (1) Motion Pursuant to 11 U.S.C. § 348(f)(2) to Determine that Debtor's Conversion from Chapter 13 to Chapter 7 was in Bad Faith filed by James P. Trott, Jr. ("Trott") on February 13, 1998; (2) Debtor's Objection to Motion Pursuant to 11 U.S.C. § 348(f)(2) to Determine that Debtor's Conversion from Chapter 13 to Chapter 7 was in Bad Faith filed on March 6, 1998; and (3) Reply Re Motion Pursuant to 11 U.S.C. § 348(f)(2) to Determine that Debtor's Conversion from Chapter 13 to Chapter 7 was in Bad Faith filed by Trott on April 1, 1998. The Court, having reviewed the file and being advised in the premises, issues the following findings of fact, conclusions of law, and Order.

## ISSUE

The issue before the Court is whether Debtor's conversion from Chapter 13 to Chapter 7 was in bad faith thereby extending property of the Chapter 7 estate to include property of the estate as of the date of conversion pursuant to 11 U.S.C. § 348(f)(2). The question of "bad faith" under this section is one of first impression.

## BACKGROUND

Debtor filed for relief under Chapter 13 of the Bankruptcy Code on December 2, 1996. On October 3, 1997, Debtor voluntarily converted his Chapter 13 case to a case under Chapter 7 of the Bankruptcy Code. During the nine-month period Debtor was proceeding under Chapter 13, he paid approximately $4,600.00 in Plan payments to the Chapter 13 Trustee. One of his creditors, Trott, has moved the Court to order that the funds in the hands of the Chapter 13 Trustee and potentially other funds to which Debtor was entitled during the Chapter 13 case, be turned over to the Chapter 7 Trustee pursuant to Section 348(f)(2).

As grounds for his request, Trott alleges that Debtor converted his Chapter 13 case to Chapter 7 in bad faith. In support of this allegation, Trott points out that the conversion occurred on the eve of the hearing set before this Court to consider (1) objections to confirmation of Debtor's Chapter 13 Plan filed by Trott, the Chapter 13 Trustee and others, and (2) the Trustee's Motion to Dismiss premised on Debtor's ineligibility for relief under 11 U.S.C. § 109(e) based on the amount of his unsecured debt. Additionally, Trott contends that Debtor failed to disclose all of his debts in his bankruptcy schedules, failed to commit all of his disposable income to the Plan as required by 11 U.S.C. § 1325(b)(1)(B), and failed to reveal funds to which Debtor was entitled from an overbid on a foreclosure of property in which Debtor had an interest. Further, Trott argues that Debtor knew or should have known all along that his unsecured debts exceeded the unsecured debt threshold of $250,000.00 under 11 U.S.C. § 109(e). Trott asserts that Debtor's conduct during the pendency of the Chapter 13 case and the eleventh-hour conversion to Chapter 7 equate to manifest bad faith on the part of Debtor, justifying application of Section 348(f)(2) so that property in the

Chapter 7 estate will include all property of the estate as of the date of conversion.[1]

Debtor counters that not only was the conversion not in bad faith, it was precisely what Trott requested in his prayer for relief in his objection to confirmation. Debtor asserts that since conversion to Chapter 7 was precisely what Trott had previously requested, Trott cannot now claim Debtor's conversion was in bad faith. Additionally, Debtor argues that he did not disclose the overbid of approximately $44,563.99 from a foreclosure proceeding because he did not have any rights to the overbid. Debtor contends that the property foreclosed upon by Rocky Mountain Land Company was owned by Siegfried Construction, one of Debtor's corporations, and that any overbid would necessarily be returned to the owner of the property, i.e. the corporate entity. Since Debtor was not an owner of the property, merely the maker on the note, he ostensibly had no right to the funds.

Next, Debtor asserts that he did not reveal the debt owed to the same foreclosing creditor, Rocky Mountain Land Company, because he did not think he had personal liability on the debt.

Debtor asserts that his failure to reveal this debt was not part of a devious scheme, but rather it resulted from confusion on the part of Debtor regarding the ownership of the land and the maker of the note. In addition, the Debtor adds, he did rectify this discrepancy by amending his schedules to include this debt as soon as he became aware of his personal liability on the obligation to Rocky Mountain Land Company.

Debtor further argues that at all times during the Chapter 13 case there were good faith disputes among the parties regarding his eligibility under Section 109(e). Debtor points to the disputes regarding the correct classification of the Rocky Mountain Land Company debt. Even though the Chapter 13 Trustee and Trott contend that the entire debt would be unsecured as to Debtor because the property securing the debt was not owned by Debtor, Debtor argues there is case law[2] to support his argument that this was a fully-secured claim. In addition, Debtor contends that Trott's claim[3] could not be included in any calculation of his unsecured debt since the claim, based on a tort, is contingent and unliquidated. Finally, Debtor maintains there was a good faith dispute regarding the amount of the unsecured debt of Bank of Boulder.[4] Debtor argues that the Bank of Boulder debt, resulting from a foreclosure deficiency on Debtor's former residence, included approximately $20,000.00 in post-petition expenses which should be deducted from its proof of claim.

Debtor maintains that he had a substantial chance of prevailing on these issues, but ultimately decided to convert in large part because of the number of issues he faced and the reality that it was a close (but not definite) call as to which way the issues would be decided. Affirmatively, Debtor asserts that the conversion was based, in part, on his belief that he would be losing his present job and would, therefore, be unable to make his Chapter 13 Plan payments.

## DISCUSSION

Essentially, the disputes in this case center around interpretation and application of the terms "property of the estate" and "bad faith." Generally, "property of the estate" consists of all legal or equitable interests of the debtor in property as of the commencement of the case. 11 U.S.C. § 541(a)(1). In addition to such property, in a Chapter 13 proceeding, prior to confirma-

1. Trott concedes that Debtor's counsel will, pursuant to Court Order, be paid additional attorney fees in the amount of $1,748.50 from the $4,600.00 currently held by the Chapter 13 Trustee. Thus, the amount available to the Chapter 7 estate from the Chapter 13 Trustee would be approximately $2,851.50.

2. Debtor cites *In re Gorman*, 58 B.R. 372 (Bankr. E.D.N.Y.1986) and *In re Belknap*, 174 B.R. 182 (Bankr.W.D.N.Y.1994).

3. Trott filed a Proof of Claim on May 20, 1997 evidencing a $244,306.70 unsecured priority claim.

4. Bank of Boulder filed a Proof of Claim on May 20, 1997 evidencing a $47,221.21 unsecured nonpriority claim.

tion of a plan, "property of the estate" includes property acquired by the debtor and earnings from services performed by the debtor after commencement of the case, but before the case is closed, dismissed, or converted. 11 U.S.C. §§ 1306(a)(1); 1306(a)(2). Due to the expanded definition of "property of the estate" in a Chapter 13 case, conflict arises when a debtor converts a Chapter 13 case to a Chapter 7 case. The dispute in such a conversion generally concerns whether the property in the Chapter 7 estate will include all property acquired by the debtor or earned by the debtor after commencement of the Chapter 13 case, but before conversion to Chapter 7. Prior to 1994, courts took many different and conflicting approaches in determining the extent of the property of the estate in the Chapter 7 case upon conversion from Chapter 13.[5]

In an attempt to resolve the conflicting decisions regarding the correct identity of property of the estate in the Chapter 7 case upon conversion from Chapter 13, Congress added a new section to the Bankruptcy Code in the Bankruptcy Reform Act of 1994. Section 348(f)(1)(A) was added to clarify that property of the estate in the converted case shall consist of property of the estate, as of the date of filing of the petition, that remains in the possession of or is under the control of the debtor on the date of conversion. 11 U.S.C. § 348(f)(1)(A). Therefore, in the typical preconfirmation conversion from Chapter 13 to Chapter 7, any property in the hands of the Chapter 13 Trustee will be returned to the debtor and the debtor will be entitled to retain most, if not all, property acquired during the pendency of the Chapter 13 case. An important exception, however, was added to this rule by Section 348(f)(2).

■■■ If the debtor converts a case under Chapter 13 to a case under Chapter 7 or another chapter under Title 11 in bad faith, the property in the converted case shall be extended to include property of the estate as of the date of conversion. 11 U.S.C. § 348(f)(2). Therefore, if the bad faith conversion is done prior to confirmation, any

property in the hands of the Chapter 13 Trustee and, potentially, any property acquired by debtor during the pendency of the Chapter 13, will become property of the Chapter 7 estate.

In the instant case, Trott is requesting that this Court apply the exception to Section 348(f)(1)(A) and determine that the conversion in this case was made in bad faith and, therefore, property in the possession of the Chapter 13 Trustee and property potentially acquired by Debtor during the pendency of the Chapter 13 will be considered property of the Chapter 7 estate. The difficulty in applying Section 348(f)(2) in the instant case is compounded by the lack of case law, legislative history or guiding authority. To the best of this Court's knowledge, no other reported case in any jurisdiction has dealt with the application of Section 348(f)(2). Additionally, the statutory language does not define "bad faith" and application of this amorphous standard has been left to the courts to determine. Therefore, this Court will look to general definitions and guiding principles found in cases dealing with a debtor's "bad faith" or "lack of good faith."

A good starting point is the general definition of "bad faith" contained in *Black's Law Dictionary*. *Black's* defines "bad faith" as

The opposite of "good faith," generally implying or involving actual or constructive fraud, or a design to mislead or deceive another, or a neglect or refusal to fulfill some duty or some contractual obligation, not prompted by an honest mistake as to one's rights or duties, but by some interested or sinister motive. Term "bad faith" is not simply bad judgment or negligence, but rather it implies the conscious doing of a wrong because of dishonest purpose or moral obliquity; it is different from the negative idea of negligence in that it contemplates a state of mind affirmatively operating with furtive design or ill will. *Stath v. Williams*, Ind.App., [174 Ind.App. 369] 367 N.E.2d 1120, 1124.

*Black's Law Dictionary* (6th ed.1990).

Although not synonymous, "lack of good faith" and "bad faith" are often used inter-

---

**5.** See, e.g., *Matter of Lybrook*, 951 F.2d 136 (7th Cir.1991); *In re Bobroff*, 766 F.2d 797 (3rd Cir. 1985); *In re Leonard*, 150 B.R. 709 (Bankr. W.D.Ark.1992); *In re Wanderlich*, 36 B.R. 710 (Bankr.W.D.N.Y.1984);

changeably by courts, especially in determining whether a Chapter 13 plan has been proposed in good faith as required by 11 U.S.C. § 1325(a)(3). Certain case law dealing with standards applicable to lack of "good faith" under Section 1325(a)(3) is helpful in interpreting and applying the term "bad faith" as it is used in Section 348(f)(2).

In *Flygare v. Boulden,* 709 F.2d 1344 (10th Cir.1983), the Tenth Circuit generally adopted the reasoning that a finding of "good faith," or more accurately a "lack of good faith," requires an inquiry, on a case-by-case basis, into whether the plan abuses the provisions, purpose or spirit of Chapter 13. *Id.* at 1346.

The Tenth Circuit in *In re Rasmussen,* 888 F.2d 703, 704 (10th Cir.1989), cited the *Flygare* decision for the holding that "bad faith is to be judged by the totality of the circumstances on a case by case basis."[6] In *Rasmussen,* the debtor was originally unable to meet the jurisdictional limits of a Chapter 13 case because his unsecured debts totalled more than $100,000 in contravention of 11 U.S.C. § 109(e). Mr. Rasmussen, therefore, proceeded to discharge all his unsecured debts in a Chapter 7 case, except for one the court found to be nondischargeable under 11 U.S.C. § 523(a)(2). Twelve days after the conclusion of his Chapter 7 proceeding, Mr. Rasmussen initiated a proceeding under Chapter 13, listing the nondischargeable debt in the Chapter 7 as his only debt. The Tenth Circuit held that

> On balance, using the totality of the circumstances' approach required by Flygare, we conclude that Mr. Rasmussen's Chapter 13 filing was not made in good faith. We reach this conclusion because the Chapter 13 filing was a manipulation of the bankruptcy system in order to discharge a single debt for de minimis payments under a Chapter 13 plan which was ruled not dischargeable under an immediately previous Chapter 7 filing, when the debtor could

not originally meet the jurisdictional requirements of Chapter 13.

*Id.* at 706.

Another court stated that the term "good faith" as it is used in 11 U.S.C. §. 1325(a)(3), has a meaning consisting of two elements: (1) honesty of purpose; and (2) full and complete disclosure of the financial acts of the debtor. *In re Harper,* 11 B.R. 395, 396 (Bankr.N.D.Ga.1981).

■ Discerning a difference between "lack of good faith" and "bad faith" in the case law is not easy. While the terms are unfortunately used at times interchangeably, this Court believes there is a slight difference in tone and degree, if not in substance as well. Bad faith, by implication or nuance, is something more than lack of good faith. Bad faith is more extreme; lack of good faith is more neutral. Bad faith is more severe, more flagrant; lack of good faith is perhaps more innocuous, more moderate.

■ Any inquiry into a debtor's good faith or bad faith will necessarily be very fact driven. A court must apply broad standards and general definitions of bad faith to the specific facts of the case to determine if there is fraud, deception, dishonesty, lack of disclosure of financial acts or an abuse of the provisions, purpose or spirit of the Bankruptcy Code. In other words, a court will have to determine if there has been an unfair manipulation of the bankruptcy system to the substantial detriment or disadvantage of creditors.

■ In the instant case, the Court believes that Debtor's conversion to Chapter 7 was in bad faith. The Court reaches this conclusion after a thorough review of Debtor's conduct in and management of this case, which itself evidences a pattern of dissembling, failure to fully or accurately disclose financial affairs, disingenuous explanations of wrongful conduct and unfair manipulation of the bankruptcy system to the detriment of his creditors. This continuing pattern of lack of disclosure and procedural gymnastics,

---

**6.** The Court would note that the *Flygare* Court never used the term "bad faith," but the Court in *Rasmussen* ascribed the use of that term—or more accurately, that standard—to the *Flygare* Court. This is a classic illustration of the interchangeable, sometimes indiscriminate, use of the two terms.

combined with an eleventh-hour conversion to another chapter to avoid imminent hearings on (1) objections to confirmation, including objections alleging lack of good faith; and (2) Debtor's eligibility under Section 109(e), is sufficient to find that this case was converted in bad faith.

The Court's conclusion that this was a bad faith conversion is based, in part, on the cumulative effect of Debtor's failures to disclose both assets and debts during the pendency of the Chapter 13 case. Initially, the Court would note Debtor's failure to disclose the Rocky Mountain Land Company debt. Debtor's defense to this allegation is that he was confused as to the maker of the Note and he believed that the debt was incurred by one of his corporate entities. The Court, however, has reviewed the Promissory Note underlying this debt and it is clearly a personal obligation of Debtor.[7] Nowhere does the Note evidence any corporate or business entity. Debtor, in his individual capacity, is the sole maker of the Note. Additionally, although this information was made available to Debtor in a letter dated April 7, 1997 from Rocky Mountain Land Company to Debtor, Exhibit B to Trott's Motion, it was not disclosed by Debtor in his amended schedules until September 17, 1997, more than five months later.

Further, Debtor failed to disclose or make available the $44,563.69 overbid from the Rocky Mountain Land Company foreclosure. The Court believes Debtor, in whole or in part, indirectly, if not directly, had an interest in and control over these funds, yet Debtor failed to disclose this information to the Court, the Chapter 13 Trustee, or any other party-in-interest. Instead, Debtor signed over the rights to these funds to one of his unscheduled creditors, i.e. Rocky Mountain Land Company. Even if the Court believes Debtor was confused as to the ownership of these funds, the Court cannot conclude that Debtor was honest and forthright about them. If Debtor was correct and these funds belonged to his corporation, then the corporation or Debtor's stock ownership in the

corporation would have had value that should have been disclosed in Debtor's bankruptcy schedules. Instead, Debtor lists the value of his corporation at zero.

Even if Debtor was correct that there were good faith disputes among the parties regarding his eligibility under Section 109(e), the Court does not believe Debtor fully and fairly valued the Bank of Boulder claim. According to Debtor's own admissions, if the Bank of Boulder Proof of Claim in the amount of $47,221.21 is accurate, his unsecured debt would exceed the $250,000.00 debt ceiling imposed on Chapter 13 debtors under 11 U.S.C. § 109(e). Debtor argues, however, that the Bank of Boulder claim should be reduced by $20,000.00 because it includes post-petition expenses. Debtor did not, however, present any evidence to support this unilateral, summary reduction of $20,000.00 in the Bank of Boulder claim, nor did Debtor file an objection to said Proof of Claim. The Court, under the circumstances, does not find Debtor's argument regarding the Bank of Boulder claim to be credible.

When the above-recited circumstances are coupled with an eleventh-hour conversion to avoid this Court's imminent hearings on (1) objections to confirmation, including objections alleging bad faith under 11 U.S.C. § 1325(a)(3); and (2) Debtor's eligibility under Section 109(e), the Court finds that the totality of circumstances indicate the conversion of this case was made in bad faith. Considering Debtor's pattern of deception and dishonesty in revealing assets and disclosing debts, the Court finds that the proper disposition of funds in the hands of the Chapter 13 Trustee and funds potentially received by Debtor during the pendency of the Chapter 13 case is to have them turned over the Chapter 7 Trustee for distribution to creditors.

## CONCLUSION

In determining whether a debtor's conversion from Chapter 13 to Chapter 7 is in bad

---

7. Debtor provided the Court with copies of a Note and Deed of Trust Modification Agreement and Assignment of Deed of Trust relating to the same property that was foreclosed on by Rocky Mountain Land Company. However, as admitted by Debtor, nothing was ever formalized to change or modify the borrower on the Note from Debtor to his corporate entity.

faith, a court should look at the specific facts of the case to determine if there is fraud, deception, dishonesty, lack of disclosure of financial acts or an abuse of the provisions, purpose or spirit of the law. In the instant case, the cumulative effect of Debtor's (1) complete, or at least untimely, failure to disclose assets and debts; (2) failure to deal with the Court in a fully candid, forthright and truthful manner; (3) failure to fully and fairly value creditors' claims; and (4) eleventh-hour conversion, cause the Court to conclude that, not only was this a bad faith conversion, it was an unfair manipulation of the Bankruptcy Code to the substantial detriment or disadvantage of the creditors in this case. Since the Court concludes that this was a bad faith conversion from Chapter 13 to Chapter 7, Section 348(f)(2) mandates that the property of the estate in the Chapter 7 be extended to include property of the estate as of the date of conversion. Thus, any funds in the hands of the Chapter 13 Trustee shall be turned over to the Chapter 7 estate. Additionally, the Chapter 7 estate may include additional funds or proceeds to which Debtor became entitled during the pendency of the Chapter 13 case.

## ORDER

Accordingly, it is

ORDERED that the Motion Pursuant to 11 U.S.C. § 348(f)(2) to Determine that Debtor's Conversion from Chapter 13 to Chapter 7 was in Bad Faith is GRANTED.