**In re Estavan/Nicole BEJARANO, Debtors.**

**No. 01–37721.**

United States Bankruptcy Court, N.D. Ohio.

Aug. 21, 2003.

Gordon R. Barry, Toledo, OH, for debtors.

Ericka S. Parker, Toledo, OH, for trustee.

Tracey M. Johnson, Lerner, Sampson & Rothfuss, Cincinnati, OH, Wendell H. Livingston, Newark, NJ, Elin S. Meyer, Keith, Weiner & Associates, Cleveland, OH, Matthew J. Thompson, Columbus, OH, for creditors.

### DECISION AND ORDER

RICHARD L. SPEER, Bankruptcy Judge.

This cause comes before the Court upon the Trustee's Objection to the Debtors' claim of exemption. The sole issue raised by this Objection concerns whether certain property rights which inured to the benefit of the Debtors subsequent to the filing of a Chapter 13 bankruptcy, but prior to the conversion of their case to a Chapter 7 bankruptcy, are property of the estate, and thus subject to administration by the Trustee. Resolution of this issue turns on the question of whether, for purposes of 11 U.S.C. § 348(f), the Debtors converted their case to a Chapter 7 bankruptcy in "bad faith."

On March 19, 2003, the Court conducted an evidentiary hearing on this issue. After hearing the evidence presented at this Hearing, and after examining the entire record of this case, the Court, with respect to the "bad faith" standard of § 348(f)(2), makes the following findings of fact:

On October 18, 2000, the Debtors commenced a case in this Court under Chapter 13 of the United States Bankruptcy Code; this case was subsequently dismissed by order of the Court on October 12, 2001.

On December 14, 2001, the Debtors filed a second petition in this Court under Chapter 13 of the United States Bankruptcy Code. After the commencement of their case, one initial and two subsequent creditor's meetings were scheduled, with the latter meetings being

scheduled to give the Debtors time to find sufficient resources to fund their plan of reorganization. Of the scheduled creditors' meetings, the Debtors attended the first two held on February 14, 2002, and April 26, 2002, but failed to attend the last meeting scheduled for June 13, 2002.

During the pendency of their second Chapter 13 case, the Debtors made one payment of $560.00. At the same time, the Debtors incurred a significant amount of additional debt. On June 13, 2002, the Trustee filed a Motion to Dismiss their case for want of prosecution, with a hearing on this matter being set for September 4, 2002.

On July 29, 2002, the Debtors, along with their children, were involved in an automobile accident. Neither of the Debtors suffered major injuries, although one of their children broke an arm. The Debtors for their injuries were initially treated by a primary care physician, and later sought help from a chiropractor. At the time of the Hearing held on this matter, neither the Debtors nor their children were being treated for the injuries they sustained in the automobile accident. Additionally, the Debtors have not pursued a claim against the other party involved in the automobile accident.

On September 3, 2002, the Debtors filed a Motion to convert their case to a Chapter 7 bankruptcy, with said motion being granted by the Court on September 10, 2002.

Since filing their first Chapter 13 case and up through their second Chapter 13 case, both of the Debtors have been employed, on a sporadic basis, in low paying jobs. Although employed at the commencement of their second Chapter 13 case, both of the Debtors became unemployed during the pendency of this case, with the Debtor, Estavan Bejarano, voluntarily quitting his job, while the Debtor, Nicole Bejarano, was let go from her job.

For the year 2002, the Debtors are entitled to a federal tax refund in the amount of $3,995.00 and a state tax refund in the amount of $145.00.

## LEGAL DISCUSSION

Pursuant to 28 U.S.C. § 157(b)(2)(A)/(B), matters concerning the administration of the estate and determinations concerning exemptions are deemed core proceeding over which this Court has the jurisdictional authority to enter final orders.

 The issue raised in this case concerns whether two assets which were obtained subsequent to the filling of the Debtors' Chapter 13 Bankruptcy, but prior to the conversion of the case to a Chapter 7 bankruptcy, are to be included within the Debtors' Chapter 7 estate. Section 348(f) governs this issue by providing:

(F)(1) Except as provided in paragraph (2), when a case under chapter 13 of this title is converted to a case under another chapter under this title–

(A) property of the estate in the converted case shall consist of property of the estate, as of the date of filing of the petition, that remains in the possession of or is under the control of the debtor on the date of conversion[.]

(2) If the debtor converts a case under chapter 13 of this title to a case under another chapter under this title in bad faith, the property in the converted case shall consist of the property of the estate as of the date of conversion.

Thus, under § 348(f) the general rule is that when a case is converted from a Chapter 13 to a Chapter 7, any property acquired by the debtor after the commencement of the case, but prior to con-

version, does not become property of the estate in the converted case. The exception to this rule is if the case was converted in "bad faith."

■ The overall basis for the Trustee's argument in support of the existence of "bad faith" rests upon the Debtors' attempt to retain, free from the jurisdiction of their bankruptcy estate, the only two assets which are potentially available for distribution to creditors—i.e., tax refunds worth over Four Thousand dollars ($4,000.00) and personal injury claims in a yet undetermined amount. As it pertains to this position, however, it must be initially noted that from a legal perspective, no inference of "bad faith" arises solely because a debtor acquires a postpetition, but preconversion assets, and thereafter elects to convert their case on account of the protection afforded by § 348(f)(1). *In re Wiczek–Spaulding*, 223 B.R. 538, 540 (Bankr.D.Minn.1998). To hold otherwise would clearly go against the principle that a person should not be penalized solely for exercising a statutory right. *See, e.g., In re Dornon*, 103 B.R. 61, 65 (Bankr. N.D.N.Y.) (a debtor cannot be penalized for exercising statutory right to the fresh start of a Chapter 13 super-discharge). In addition, to penalize a debtor for merely exercising their right under § 348(f)(1) goes against the Congressional policy of encouraging debtors to seek bankruptcy relief under Chapter 13 and not Chapter 7. *Matter of Erchenbrecher*, 85 B.R. 42, 44 (Bankr.N.D.Ohio 1988) (Congressional policy clearly encourage debtors to file Chapter 13 petitions).

■ However, as for exactly what conditions will give rise to a finding of "bad faith" under § 348(f)(2), the Bankruptcy Code is silent. As a result, basic principles of statutory construction require that, in the absence of a definition, the normal everyday meaning of the term be utilized with due deference being afforded to the statutory structure in which the term is used. *FDIC v. Meyer*, 510 U.S. 471, 476, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994); *O'Connell v. Shalala*, 79 F.3d 170, 173 (1st Cir.1996). Helpful in this regard, is the definition of "bad faith" set forth by the Sixth Circuit Court of Appeals in *U.S. v. True*, where, although addressing a different legal issue, the Court held that "bad faith" means "not simply bad judgment or negligence, but rather it implies the conscious doing of a wrong because of dishonest purpose or moral obliquity; ... it contemplates a state of mind affirmatively operating with furtive design or ill will." 250 F.3d 410, 423 (6th Cir.2001). Once more, given the general nature of the term, courts, when addressing the issue of "bad faith" under § 348(f)(2), consider any and all relevant factual circumstances. *In re Siegfried*, 219 B.R. 581, 585 (Bankr. D.Colo.1998).

In accordance with the above legal standard, it is asserted by the Trustee that the Debtors' conversion to a Chapter 7 must be examined in light of the following indicia, the cumulative effect of which, the Trustee contends, demonstrate that the Debtors sought to unfairly manipulate the bankruptcy process: (1) the late nature of the Debtors' Motion to Convert; (2) the fact that the Debtors only made one payment to the Trustee despite the pendency of their case for a relatively long period of time; (3) the Debtors' failure to attend a creditor's meeting; (4) additional postpetition, but preconversion debt incurred by the Debtors; and (5) the Debtors' two Chapter 13 bankruptcy filings. (Doc. No. 101). However, according to the Debtors the above indicia simply demonstrate their honest, albeit unsuccessful, attempts to save their home. (Doc. No. 105).

At a minimum, the above considerations set forth by the Trustee are surely indica-

tive of a debtor who will not likely put forth, much less actually implement, a successful plan of reorganization. In addition, a few of the points raised by the Trustee do suggest that the Debtors, despite fully knowing their inability to put forth a viable plan of reorganization, were nevertheless attempting to extend the benefits afforded to them by the bankruptcy stay for as long as possible. For example, the Court does find it troubling that neither of the Debtors, while under the protection of this Court, saw it necessary to attend their third rescheduled meeting of creditors. Similarly, it is not necessarily indicative of good faith that the Debtors waited to file their Motion to convert until just one day before the hearing was to be held on the Chapter 13 Trustee's Motion to Dismiss. In like fashion, the Debtors, during the progression of their case, only made one payment of just over Five Hundred dollars ($500.00), despite the case being in existence for approximately one year. Thus, given these considerations, it is clear that, at the very least, the Debtors were not entirely forthright in their approach to bankruptcy.

■ Nevertheless, the above negative behavior does not necessarily lead to a finding of a "bad faith" conversion. Instead, implicit in the meaning of "bad faith," under § 348(f)(2) is the notion that some sort of nefarious planning was involved. As stated by the court in *In re Siegfried,* "bad faith" requires a determination that "there has been an unfair manipulation of the bankruptcy system to the substantial detriment or disadvantage of creditors." 219 B.R. at 585.

In this regard, strongly mitigating against a finding that the Debtors set out to unfairly manipulate the bankruptcy system is the undisputed fact that the Debtors' personal injury claims were not incurred until some time after the Debtors filed their second Chapter 13 case. Thus, in initially seeking relief under Chapter 13, neither of the Debtors could have been attempting to deprive their creditors of this potential asset. Furthermore, the Chapter 13 Trustee did give the Debtors additional time to implement their Chapter 13 plan, thus suggesting that the Debtors, until near the end, were sincere in their belief that they could formulate a viable plan of reorganization.

However, mitigating even further against the existence of "bad faith," is the fact that neither of the assets at issue in this case are worth a significant amount of money to the Debtors. Moreover, on account of exemptions, such assets are likely worth even less to the Trustee. As such, the Court does not see a huge motive for the Debtors to manipulate the bankruptcy system. For example, the Debtors' personal injury claims, which at the present time have not even been pursued, are not likely worth any appreciable amount of money considering that neither of the Debtors suffered serious injuries necessitating extensive follow-on treatment; similarly, the injuries sustained by the Debtors did not result in any loss of wages. Moreover, to the extent the Debtors do realize any recovery for their personal injuries, each of the Debtors is still likely entitled to claim a $5,000.00 exemption in such an award pursuant to O.R.C. § 2329.66(A)(12). As a result, the Debtors' personal injury claims are worth even less, and in all probability nothing to the Trustee. In a like manner, each of the Debtors, with respect to their 2002 tax refunds, has two potential exemptions worth $800.00—O.R.C. § 2329.66(A)(4)(a) ($400.00 exemption for money to become due); and O.R.C. § 2329.66(A)(18) ($400.00 wildcard exemption). Consequently, the Debtors tax refunds could possibly be worth less than $2,500.00 to the Trustee.

Thus, given the above considerations, the Court finds that while there do exist inferences that the Debtors did not always proceed in good faith, the greater weight of the evidence leads to the conclusion the Debtors did not, under the standard of § 348(f)(2), convert their case in "bad faith." Accordingly, the Trustee's objection is overruled to the extent that it seeks turnover of the Debtors' 2002 tax refunds and control of the Debtors' personal injury claims. In reaching the conclusions found herein, the Court has considered all of the evidence, exhibits and arguments of counsel, regardless of whether or not they are specifically referred to in this Decision.

Accordingly, it is

**ORDERED** that the Trustee's Objection to the Debtors' Claim of Exemption, be, and is hereby, OVERRULED.

It is **FURTHER ORDERED** that, pursuant to 11 U.S.C. § 348(f)(1), any interest the Debtors have in their 2002 federal and state tax refunds, together with any interest the Debtors have in personal injury claims stemming from an automobile accident that occurred on or about July 29, 2002, shall *not* be included within the scope of the Debtors' bankruptcy estate.