**In re Victor & Joey PEREZ, Debtors.**

No. 01–10379 (MFW).

United States Bankruptcy Court,
D. Delaware.

July 5, 2006.

Cynthia L. Carroll, Newark, DE, for Debtors.

Jeoffrey Burtch, Wilmington, DE, Chapter 7 Trustee.

### MEMORANDUM OPINION[1]

MARY F. WALRATH, Bankruptcy Judge.

Before the Court is the Motion of Jeoffrey L. Burtch, the chapter 7 trustee (the "Trustee") to employ a real estate broker to sell the residence (the "Property") owned by Victor and Joey Perez (the "Debtors"). After consideration of briefs submitted by the parties and for the reasons set forth below, the Court will deny the Motion conditioned on the payment by the Debtors to the Trustee of $22,921.98 which the Court finds is the value of the Property, as of the date the Debtors filed their chapter 13 petition, less their exemptions, the secured debt on the Property, and the reasonable costs of selling the Property.

### I. BACKGROUND

On September 10, 2001 (the "Petition Date"), the Debtors filed a petition under chapter 13 of the Bankruptcy Code. After several requests for extension of time, the Debtors filed their schedules and chapter 13 plan on November 1, 2001. The Debtors listed the Property on their Schedules at a value of $163,000 and claimed an exemption in it of $6,700 plus 10% costs of sale ($16,300). The Debtors listed Astoria Federal Savings and Loan Association (the "Mortgagee") as a secured creditor on the Property for $140,000. Consequently, the Debtors' Schedules showed that there was no equity in the Property for unsecured creditors.

The Debtors also requested several extensions of their confirmation hearing. Ultimately, their First Amended chapter 13 plan was confirmed by the Court on April 29, 2002. The Debtors filed two additional motions to amend their plan.

In the interim, the Mortgagee filed a proof of secured claim asserting that the amount due as of the Petition Date was $135,538.02. On March 11, 2002, the Mortgagee filed a motion for relief from the stay asserting it was due approximately $136,000. On September 4, 2002, the Mortgagee filed an amended motion for relief from the stay asserting a payoff due of $141,318.70. A stipulation between the Debtors and the Mortgagee was approved pursuant to which the Debtors agreed to cure the arrearages.

On May 16, 2003, the chapter 13 trustee filed a motion to dismiss the Debtors' case for material default under their confirmed plan. The Debtors failed to respond and the case was dismissed. The Debtors subsequently filed a motion to vacate the dismissal, which was granted on August 25, 2003.

On July 1, 2004, the chapter 13 trustee filed a second motion to dismiss, because of the Debtors' continuing defaults under the plan. The Court ordered the Debtors to pay $981 in arrears to the chapter 13 trustee by September 15, 2004. The Debtors failed to make that payment and, instead, filed a notice of conversion to chapter 7 on September 27, 2004 (the "Conversion Date").

After failing to appear at the first scheduled meeting of creditors in the chapter 7 case, the Debtors ultimately appeared, and

---

1. This Opinion constitutes the findings of fact and conclusions of law of the Court pursuant to Federal Rule of Bankruptcy Procedure 7052, which is made applicable to contested matters by Federal Rule of Bankruptcy Procedure 9014.

the meeting was held, on January 19, 2005. At that time, the Debtors' counsel gave the Trustee a copy of the Debtors' Amended Schedules.[2] The Amended Schedules increased the Debtors' claimed exemption in the Property to $8,915 but deleted any reference to the costs of sale "exemption."

On August 16, 2005, the Trustee filed an application to employ a real estate broker for the purposes of selling the Property. The Trustee asserted that, at that time, the Property was worth $300,000 and, therefore, there was sufficient equity after the Debtors' exemption to provide a distribution to unsecured creditors. The Debtors objected to the application and a hearing was held on September 8, 2005. At that time the parties disagreed on whether the confirmation of the Debtors' chapter 13 plan constituted a finding that the Property had the value listed on the Debtors' Schedules.

After considering the parties' arguments and cases cited by them, the Court entered an Order on September 30, 2005, concluding that any appreciation in value since the Petition Date belonged to the Debtors and that the confirmation of the chapter 13 plan was not a finding that the Property had the value listed on the Debtors' Schedules.[3] The Court set a hearing for November 1, 2005, to permit the Trustee to present evidence of the value of the Property as of the Petition Date. At that hearing the parties stipulated that the value was $195,000. The Debtors stated at that time their intention to refinance the Property and to pay the Trustee the estate's share of the equity.

Subsequently, however, the parties could not agree on the amount of the equity available to the estate. Specifically, the Trustee objected to the Debtors' argument that the value should be reduced by 10% for the costs of sale. In addition, the Trustee asserted that the secured claim should be reduced by payments made by the Debtors post-petition. The Court directed that the parties brief those issues.

On January 30, 2006, the Trustee filed his brief. After several extension requests, the Debtors filed their brief on March 1, 2006. The Trustee's reply brief was filed on March 13, 2006. The matter is ripe for decision.

## II. JURISDICTION

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 157(b)(2)(A), (B), (E) & (O).

## III. DISCUSSION

The parties submitted briefs that far exceed the narrow issues the Court asked to be addressed. The Court, nonetheless, addresses those issues.

### A. Bad Faith Conversion

The Trustee's brief asserts that the Property should be valued as of the Conversion Date rather than the Petition Date. He relies on section 348(f)(2) which provides that:

> If the debtor converts a case under chapter 13 of this title to a case under another chapter under this title in bad

---

**2.** Although counsel for the Debtors represented to the Trustee that the Amended Schedules had been filed, only Amended Schedule B appears to have been filed. The Court accepts the representation of the Debtors' counsel that this was inadvertent rather than intentional, because there does not appear to be any advantage the Debtors could have gained

by not filing the remainder of the Amended Schedules.

**3.** The Court relied on the decision in *In re Jackson*, 317 B.R. 511, 513–18 (Bankr.N.D.Ill. 2004) and declined to adopt the reasoning in *In re Slack*, 290 B.R. 282, 287 (Bankr.D.N.J. 2003), *aff'd* 112 Fed.Appx. 868 (3d Cir.2004).

faith, the property in the converted case shall consist of the property of the estate as of the date of conversion.

11 U.S.C. § 348(f)(2) (amended 2005).[4] This is an exception to the general rule that on conversion from chapter 13 to 7, the property of the estate consists only of the property as of the original petition date that remains in the estate as of the conversion date. *Id.* at § 348(f)(1)(a). In other words, post-petition, pre-conversion earnings and appreciation of property usually do not become property of the estate in the chapter 7 case. *See, e.g., In re Siegfried,* 219 B.R. 581, 584 (Bankr.D.Colo. 1998)

The Trustee asserts that the case was converted in bad faith and, therefore, the appreciated value of the Property is property of the chapter 7 estate. The Trustee points to the Debtors' "pattern of manipulative, dilatory and fraudulent conduct" as evidenced by the extensive delays in the Debtors' chapter 7 and 13 cases, the numerous extensions of time requested by the Debtors, the failure of the Debtors to file Schedules and Amended Schedules timely and their overall lack of diligence. The Trustee argues that this mandates a finding of bad faith. *See, e.g., Siegfried,* 219 B.R. at 585 (concluding conversion was in bad faith based on "review of Debtor's conduct in and management of this case, which itself evidences a pattern of dissembling, failure to fully or accurately disclose financial affairs, disingenuous explanations of wrongful conduct and unfair manipulation of the bankruptcy system to the detriment of his creditors").

The Debtors, of course, dispute the Trustee's allegations and assert that there were numerous reasons for their actions and inaction. They also note that section 348(f)(2) requires a finding that the *conversion* of the case from chapter 13 to 7 was in bad faith, not that the Debtors acted in bad faith in either chapter. Finally, they assert that the Trustee has failed to present evidence of bad faith which they argue is "not simply bad judgment or negligence, but rather it implies the conscious doing of a wrong because of dishonest purpose or moral obliquity; . . . it contemplates a state of mind affirmatively operating with furtive design or ill will." *In re Bejarano,* 302 B.R. 559, 562 (Bankr. N.D.Ohio 2003) (citing *United States v. True,* 250 F.3d 410, 423 (6th Cir.2001)).

■■■ The Court disagrees with the Debtors' assertion that only bad faith in the conversion of the case is relevant. Rather, the Court must look at the Debtors' conduct throughout the case. *See, e.g., Bejarano,* 302 B.R. at 562–63; *Siegfried,* 219 B.R. at 586. The cases cited by the both the Trustee and the Debtors concur that section 348(f)(2) requires a finding of bad faith. This is more than a lack of diligence, however. It requires a determination that the Debtors unfairly manipulated the bankruptcy process to the disadvantage of creditors. *Bejarano,* 302 B.R. at 563; *Siegfried,* 219 B.R. at 585. This is a fact-intensive inquiry.

■■■ The Trustee has presented evidence that the Debtors were dilatory in filing their Schedules, responding to motions, and making payments to the chapter 13 trustee. Unfortunately, this is not unusual for persons in financial distress. The Debtors' explanation for their actions is plausible and not contested by the Trustee: they were trying to save a rental property. As a result of Mr. Perez's unemployment which lasted several months,

---

**4.** This section was amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, which became effective after the Petition and Conversion Dates. Therefore, the prior version is the applicable provision.

however, the Debtors were unable to make the chapter 13 plan payments and lost their rental property and vehicle to foreclosure. Once that occurred, the Debtors found there was no reason to remain in chapter 13.

The Court concludes that the actions of the Debtors in their chapter 13 case do not rise to the level of bad faith. Nor does there appear to be a manipulation of the bankruptcy process by the Debtors or any unfair advantage gained over creditors. Therefore, the Court concludes that the Trustee has failed to meet the standard for application of section 348(f)(2). Consequently, the Court must value the Property as of the Petition Date, not the Conversion Date. The parties have stipulated that value was $195,000.

### B. *Deduction for Sales Costs*

■ The Debtors assert that the value of the Property must be reduced by 10% to cover sales commissions (6%), transfer taxes (1.5%), and the Trustee's fees. The Debtors argue that the amount they have to pay the estate should be reduced by these costs because, in the absence of their refinancing the Property, the estate would have to pay those costs in order to sell it.[5]

The Trustee asserts that the estate's interest in the Property should not be reduced to cover sales costs. The Trustee casts this argument as an objection to the "exemption" for this amount claimed by the Debtors on their original Schedules. The Debtors assert that it is too late for the Trustee to object to their exemptions. Fed. R. Bankr.P. 4003(b) (objections to exemptions must be filed within thirty days after the meeting of creditors has been concluded). The Trustee asserts that he should be able to object, because the

Debtors misrepresented their claim of exemption when they gave him a copy of the Amended Schedules at the meeting of creditors saying they had been filed. Because the Amended Schedules did not include the costs of sale "exemption," the Trustee had no reason to object.

The Court agrees with the Trustee on this point. The Debtors represented to the Trustee that the Amended Schedules had been filed and the Trustee relied on that representation. In their Brief, the Debtors assert that it was only through inadvertence that the Amended Schedules were not filed. (Debtors' Brief at 10.) Therefore, the Court concludes that the Debtors are estopped from arguing now that the original Schedules, rather than the Amended Schedules are applicable. *See, e.g., Teledyne Indus., Inc. v. NLRB*, 911 F.2d 1214, 1217–18 (6th Cir.1990) ("Judicial estoppel is an equitable doctrine that preserves the integrity of the courts by preventing a party from abusing the judicial process through cynical gamesmanship, achieving success on one position, then arguing the opposite to suit an exigency of the moment."); *Paul v. Monts*, 906 F.2d 1468, 1473 (10th Cir.1990) ("A litigant is required to be consistent in his conduct. He may not maintain a position regarding a transaction wholly inconsistent with his previous acts in connection with that same transaction."); *In re One Bancorp Sec. Lit.*, 151 B.R. 1, 3 (D.Me.1993) (refusing to allow a fraudulent transfer action that would set aside an approved settlement); *Reilly v. Phillips (In re Reilly)*, 105 B.R. 59, 63 (Bankr.D.Mont.1989) (finding failure to raise issues at relief from stay hearing precluded debtors from later arguing that the procedures applica-

---

5. The Debtors note that they are incurring refinancing costs of at least $9,498.33. (*See*

Debtors' Brief, Ex. H.)

ble to adversary proceedings were to be applied).

■ The Debtors did not claim the costs of sale as an exemption on the Amended Schedules. This does not dispose of the issue, however. The issue is what value would be available to unsecured creditors in the event the Trustee were to sell the Property. The Debtor argues that to determine that value, the Court must deduct the costs of sale that the Trustee would incur. The Court agrees that it must consider the net amount that the unsecured creditors are likely to receive on a sale by the Trustee in order to determine what the Debtors must pay the estate to avoid the necessity of selling the Property.

The Trustee argues, however, that he could sell the Property on the internet thereby eliminating any commissions. While the Trustee is correct that he may be able to sell the Property on the internet, that is not what he seeks to do in this case. He has filed an application to retain a real estate broker, to whom he proposes to pay a commission of 6% of the gross sales price ($11,700 based on a value of $195,000). In addition, if the Trustee sold the Property, he would be entitled to a trustee's fee of up to $13,000. 11 U.S.C. § 326(a). He does not suggest that he would waive his fee. Finally, under applicable non-bankruptcy law, transfer taxes would be due on sale of the Property totaling 3% ($5,850), of which the estate would be responsible for half ($2,925). Therefore, the Court concludes that the value of the Property should be reduced by the actual anticipated costs of sale which total $27,625. The value must also be reduced by the exemptions claimed by the Debtors on the Debtors' Amended Schedules, $8,915.

### C. *Amount of Secured Claim*

The parties also disagree about the amount by which the Property's value must be reduced on account of the mortgage. Specifically, they disagree about the amount of the mortgage as of the Petition Date.[6] The Debtors initially asserted that the amount was $140,000 as listed on their Schedules, but have been unable to present any evidence to support that number. The Trustee asserts that the amount of that claim is reflected on the proof of claim filed by the Mortgagee in the chapter 13 case.

■ The Court agrees with the Trustee. The proof of claim filed by the Mortgagee is prima facie evidence of the amount of the claim as of the Petition Date. Fed. R. Bankr.P. 3001(f). The proof of claim reflects $135,538.02 was due as of the Petition Date.

### IV. *CONCLUSION*

Consequently, the Court concludes that the value of the Property to the estate is $22,921.98 ($195,000 minus (i) anticipated sales commission of $11,700, (ii) anticipated trustee's fees of $13,000, (iii) anticipated transfer tax of $2,925, (iv) the secured claim of $135,538.02, and (v) the Debtors' exemption of $8,915).

The Court will allow the Debtors sixty days to refinance the Property and pay the Trustee $22,921.98. In the event the Debtors fail to do so within that time, the Court will grant the Trustee's application to retain a real estate broker and will allow the Trustee to sell the Property.

An appropriate order is attached.

### ORDER

**AND NOW**, this **5th** day of **JULY, 2006**, upon consideration of the Trustee's Motion

---

**6.** Apparently, the Trustee no longer contends that the value must be adjusted by the post-petition, pre-conversion payments made by the Debtors to the Mortgagee.

to Employ a Real Estate Broker, the Debtors' response thereto and the parties' briefs, and for the reasons set forth in the accompanying Memorandum Opinion, it is hereby

**ORDERED** that the Debtors shall have sixty days from the date hereof to refinance their Property and pay the estate the value of the estate's interest therein ($22,921.98); and it is further

**ORDERED** that in the event the Debtors fail to do so, the Trustee's Motion to Employ a Real Estate Broker will be **GRANTED.**