**In re Allen and Elizabeth SLACK, Debtors.**

No. 00–61158 (RTL).

United States Bankruptcy Court, D. New Jersey.

March 26, 2003.

Andrea Dobin, Esq., Sterns & Weinroth, P.C., Chapter 7 Trustee.

Thomas W. Olick, pro se.

## *OPINION*

RAYMOND T. LYONS, Bankruptcy Judge.

A creditor objected to the chapter 7 trustee's proposed abandonment of the debtors' residence. Because the trustee was adequately informed and reasonably concluded that the residence was of no value to the estate, the objection to the abandonment is overruled.

The debtors, Allen and Elizabeth Slack, filed a chapter 13 petition on November 1, 2000. A plan was confirmed on June 6, 2001 wherein the debtors proposed curing tax liens on their residence by monthly payments over 60 months. Being unable to fulfill their plan, the debtors converted their case to a chapter 7 proceeding on September 9, 2002.

The chapter 7 trustee, Andrea Dobin, proposed to abandon her interest in the debtors' residence in Phillipsburg, New Jersey. In the Notice of Proposed Abandonment, the trustee stated that the value of the property was $43,000.00; that it was subject to liens for municipal tax sale certificates held by Capital Asset Research Corp., Ltd. ("Capital Asset") in the amount of $12,076.53 and RTL Trust in the amount of $15,494.33; and that the debtors had claimed an exemption of $28,000.00. A creditor, Thomas Olick, objected to the abandonment. He claimed that the chapter 7 trustee's information with regard to the tax lien claims was incorrect. As to RTL Trust, Mr. Olick asserted that since the debtors' chapter 13 plan had not provided any payments to RTL Trust, its claim was disallowed and its lien unenforceable. With regard to Capital Asset, Mr. Olick asserted that it should have been paid $9,480.83 under the plan as of the date of conversion and that the balance due on its lien would have been reduced to $2,595.70. Thus, Mr. Olick asserted that the value of the residence, less the outstanding lien to Capital Asset, was $40,464.30. He, therefore, objected to the abandonment. Mr. Olick later asserted that the value of the residence exceeded $43,000.00.

The chapter 7 trustee provided a certification in response to Mr. Olick's objection. She found that proofs of claim for tax liens had been filed by Capital Asset and RTL Trust in the amounts set forth in the Notice of Proposed Abandonment. Although the debtors' chapter 13 plan, as filed, had not mentioned RTL Trust, the chapter 13 trustee's final report indicated that the claim had been recognized and scheduled for payment by the chapter 13 trustee. According to the chapter 13 trustee's final report, there remained a balance due under the chapter 13 plan to Capital Asset of $9,784.50 and to RTL Trust of $12,553.69. Furthermore, the chapter 7 trustee made inquiries as to the current assessed value

of the debtors' residence and found that the Town of Phillipsburg assessed the residence at $52,700.00 and had an equalization ratio of 99 percent. After further investigation, the chapter 7 trustee continued to advocate abandonment since the outstanding tax liens and the exemptions claimed by the debtors exceeded the value of the property.

At a hearing on his objection to abandonment, Mr. Olick persisted in his assertion that the value of the property was understated and that the amount of the liens was overstated. The court gave Mr. Olick additional time to provide an independent appraisal of the value of the debtors' residence and to obtain a statement from the Tax Collector of the Town of Phillipsburg showing the actual amount of tax liens due on the property. Mr. Olick failed to do either.

Mr. Olick filed a supplemental brief asserting that Capital Assets' tax lien claim was overstated because the wrong interest rate was used and unearned interest was included. Similarly, with regard to RTL Trust's proof of claim, Mr. Olick challenged the interest rate, and unearned interest, and asserted that there were duplications within the amount shown by RTL on its proof of claim.[1]

### Jurisdiction—28 U.S.C. § 1334 & 28 U.S.C. § 157(a), (b)

The court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334, 28 U.S.C. § 157(a) and (b), and the Standing Order of Reference from the United States District Court for the District of New Jersey dated July 23, 1984, referring all cases under Title 11 of the United States Code to the bankruptcy court. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (K) and (O) since it involves the administration of the estate, validity of liens, and general liquidation of the estate.

### Abandonment—§ 554(a)

Section 554(a) of the Bankruptcy Code allows a trustee, after notice and a hearing, to abandon property that is of inconsequential value and benefit to the estate. The trustee's power to abandon property is discretionary. *See, First Nat'l Bank v. Lasater*, 196 U.S. 115, 118–19, 25 S.Ct. 206, 207–08, 49 L.Ed. 408 (1905); *In re K.C. Mach. & Tool Co.*, 816 F.2d 238, 246 (6th Cir.1987); *In re Interpictures, Inc.*, 168 B.R. 526 (Bankr.E.D.N.Y.1994). Courts defer to the trustee's judgement and place the burden on the party opposing the abandonment to prove a benefit to the estate and an abuse of the trustee's discretion. *Interpictures, Inc.*, at 535. The party opposing the abandonment must show some likely benefit to the estate, not mere speculation about possible scenarios in which there might be a benefit to the estate. *In re Cult Awareness Network, Inc.*, 205 B.R. 575 at 579 (Bankr.N.D.Ill. 1997). The court only needs to find the trustee made: 1) a business judgment; 2) in good faith; 3) upon some reasonable basis; and 4) within the trustee's scope of authority. *In re Fulton*, 162 B.R. 539, 540 (Bankr.W.D.Mo.1993). *See also,* Collier on Bankruptcy, 15th ed., rev. ¶ 554.02[4].

The objector, Mr. Olick, has failed to prove any likely benefit to the estate or an abuse of the trustee's discretion. As explained before, the evidence shows that the outstanding tax liens and debtors' exemptions exceed the value of the property. Furthermore, there is no evidence to suggest that the trustee's submissions were not produced in good faith, upon a reasonable basis or within her scope of authority.

---

1. Mr. Olick did not file an objection to the tax lien claims; nor did he serve Capital Asset or RTL Trust with his brief finding fault with their claims.

### *Effect of Conversion—§ 348(f)(1)(B)*

Here, the debtors failed to complete their chapter 13 plan and converted their case to chapter 7. After conversion to chapter 7, the value of property and secured claims is governed by 11 U.S.C. § 348(f).

Prior to 1994 there was a split of authority over the consequences of conversion of a case from chapter 13 to chapter 7. Some courts held that property acquired during the pendency of a chapter 13 case remained property of the estate following conversion to chapter 7. *In re Lybrook*, 951 F.2d 136 (7th Cir.1991). Other courts held that such post-petition property was not property of the estate upon conversion from chapter 13 to chapter 7. Property of the estate was limited to that existing as of the petition date. *In re Horton*, 130 B.R. 326, 328 (Bankr.D.Colo.1991). *See, In re Mann*, 160 B.R. 517 (Bankr.D.Vt.1993); discussing split of authority.

The Third Circuit explained the policy behind the later cases.

> This result is consonant with the Bankruptcy Code's goal of encouraging the use of debt repayment plans rather than liquidation. *See* H.R.Rep. No. 595, 95th Cong., 1st Sess. 118 (1977), U.S.Code Cong. & Admin.News p. 5904. If debtors must take the risk that property acquired during the course of an attempt at repayment will have to be liquidated for the benefit of creditors if chapter 13 proves unavailing, the incentive to give chapter 13—which must be voluntary—a try will be greatly diminished. Conversely, when chapter 13 does prove unavailing "no reason of policy suggests itself why the creditors should not be put back in precisely the same position as they would have been

had the debtor never sought to repay his debts ..." *In re Hannan*, 24 B.R. 691, 692 (Bankr.E.D.N.Y.1982).

*Bobroff v. Continental Bank (In re Bobroff)*, 766 F.2d 797, 803–804 (3d Cir. 1985).[2]

In 1994, Congress codified the *Bobroff* statement and clarified its intention to encourage use of chapter 13 by excluding post-petition property from the estate following conversion to chapter 7. Congress added § 348(f) which provides:

> (f)(1) Except as provided in paragraph (2), when a case under chapter 13 of this title is converted to a case under another chapter under this title—
>
> (A) property of the estate in the converted case shall consist of property of the estate, as of the date of filing of the petition, that remains in the possession of or is under the control of the debtor on the date of conversion; and
>
> (B) valuations of property and of allowed secured claims in the chapter 13 case shall apply in the converted case, with allowed secured claims reduced to the extent that they have been paid in accordance with the chapter 13 plan.
>
> (2) If the debtor converts a case under chapter 13 of this title to a case under another chapter under this title in bad faith, the property in the converted case shall consist of the property of the estate as of the date of conversion.

The legislative history of § 348(f) explains:

> *Section 311.  Conversion of case under chapter 13.*
>
> This amendment would clarify the Code to resolve a split in the case law about what property is in the bankrupt-

---

**2.** The holding in *Bobroff* is not applicable because the court determined that the debtor's invalid attempt to convert the chapter 13

was void *ab initio*. Thus, it never was a chapter 13 case.

cy estate when a debtor converts from chapter 13 to chapter 7. The problem arises because in chapter 13 (and chapter 12), any property acquired after the petition becomes property of the estate, at least until confirmation of a plan. Some courts have held that if the case is converted, all of this after-acquired property becomes part of the estate in the converted chapter 7 case, even though the statutory provisions making it property of the estate do not apply to chapter 7. Other courts have held that property of the estate in a converted case is the property the debtor had when the original chapter 13 petition was filed.

These latter courts have noted that to hold otherwise would create a serious disincentive to chapter 13 filings. For example, a debtor who had $10,000 equity in a home at the beginning of the case, in a State with a $10,000 homestead exemption, would have to be counseled concerning the risk that after he or she paid off a $10,000 second mortgage in the chapter 13 case, creating $10,000 in equity, there would be a risk that the home could be lost if the case were converted to chapter 7 (which can occur involuntarily). If all of the debtor's property at the time of conversion is property of the chapter 7 estate, the trustee would sell the home, to realize the $10,000 in equity for the unsecured creditors and the debtor would lose the home.

This amendment overrules the holding in cases such as *Matter of Lybrook*, 951 F.2d 136 (7th Cir.1991) and adopts the reasoning of *In re Bobroff*, 766 F.2d 797 (3d Cir.1985). However, it also gives the court discretion, in a case in which the debtor has abused the right to convert and converted in bad faith, to order that all property held at the time of conversion shall constitute property of the estate in the converted case.

*H.R.Rep. No.* 103–835 at 57 (1994), *reprinted in* 1994 U.S.C.C.A.N. 3340, 3366.

This new section was applied in *In re Wegner*, 243 B.R. 731 (Bankr.D.Neb.2000). When Ms. Wegner filed a chapter 13 petition her home was worth $42,000.00 and subject to a mortgage of $42,800.00, resulting in no equity. After four years in her chapter 13 case, she converted to chapter 7. At that time the value of her home had increased to $51,500.00 and the mortgage had been reduced to $39,900.00, leaving a difference of $11,600.00 that the trustee sought. The bankruptcy court held that under § 348(f)(1)(A) the residence was property of the chapter 7 estate since Ms. Wegner owned it at the time she filed her chapter 13 petition and still owned it upon conversion to chapter 7. *Wegner*, at 734. However, under § 348(f)(1)(B) the value was limited to the value as of the petition ($42,000.00). *Id.* The $9,500.00 appreciation in value belonged to the debtor not the estate. *Id.* at 735. The secured claim was fixed at the amount allowed in the chapter 13 case reduced by principal payments under the plan pursuant to § 348(f)(1)(B). (i.e., $42,800—$2,900 = $39,900). *Id.* The equity resulting from principal reductions on the mortgage could be exempted by the debtor. *Id. See also, In re Page*, 250 B.R. 465 (Bankr.D.N.H. 2000).

However, *compare In re Kuhlman*, 254 B.R. 755 (Bankr.N.D.Cal.2000), where a debtor's motion to compel abandonment was denied because the estate had an interest in the property and because confirmation did not occur before conversion. In *Kuhlman*, there was no valuation of the property pursuant to § 348(f)(1)(B), and therefore, the movant was not entitled to post-petition, pre-conversion appreciation. *Kuhlman*, at 758. *See also,* Collier on Bankruptcy, 15th ed., rev. ¶ 348.07[3], [4].

■ In the Slacks' chapter 7 case, the trustee has appropriately referred to the

value of the debtors' residence as shown on Schedule A—$43,000.00. Even though the court made no specific finding of value, when the chapter 13 plan was confirmed (without objection) there was an implicit finding that the scheduled value, $43,000.00, was proper since the plan treated unsecured creditors as well as they would have in a chapter 7 case. 11 U.S.C. § 1325(a)(4). Under § 348(f)(1)(B) upon conversion from chapter 13 to chapter 7 the same $43,000.00 value must be used.

The chapter 7 trustee has, also, appropriately referred to the chapter 13 trustee's final report for the balance due on the secured tax lien claims held by Capital Asset and RTL Trust. Under § 348(f)(1)(B) allowed secured claims in the chapter 13 case apply in the chapter 7 case, reduced to the extent paid under the chapter 13 plan. In this case, Capital Asset's claim was allowed at $12,076.53 and paid $2,292.03 by the chapter 13 trustee resulting in a balance due of $9,784.50. RTL Trust's claim was allowed at $15,494.33 and paid $2,940.64 by the chapter 13 trustee resulting in a balance due of $12,553.69. Mr. Olick makes one valid point, however. The proofs of claim submitted by Capital Asset and RTL Trust included post-petition interest for the 60 months of the Slacks' proposed chapter 13 plan. Since the chapter 13 case failed before the 60 months expired, the balance due on the chapter 13 trustee's final report includes some unearned interest. Nevertheless, reducing the balances due to Capital Asset and RTL Trust for unearned interest would lower the secured claims by less than $5,000—not enough to alter the chapter 7 trustee's conclusion to abandon.

Mr. Olick's other challenges to the tax lien claims are not only procedurally defective, since the creditors received no notice and opportunity to defend their claims, they are substantively without merit. For example, although Capital Asset purchased tax sale certificate 95–101 with a 3 percent interest rate, it is entitled to the higher statutory rate for subsequent years' taxes. Also, there appears to be no duplication in payment of subsequent taxes as Mr. Olick contends.

### Conclusion

The chapter 7 trustee concluded that the value of the debtors' residence ($43,000.00) less the balance on the tax lien claims of Capital Asset ($9,784.50) and RTL Trust ($12,553.69) and less the debtors' exemption of $28,000.00, yielded no value to the estate.[3] Her position is well founded. Mr. Olick has not met his burden of showing otherwise. His objection is overruled and the chapter 7 trustee's abandonment of the debtors' residence is approved.

---

**3.** In addition, the tax collector of Phillipsburg indicates that post-petition tax liens have accrued in the amount of $3,560.06. For the trustee to realize anything from the sale of the debtors' residence she would have to pay the post petition taxes and the costs of sale.