**In re Renee JACKSON, Debtor.**

**No. 00 B 24953.**

United States Bankruptcy Court,
N.D. Illinois,
Eastern Division.

Oct. 21, 2004.

Steven R. Radtke, Chill, Chill & Radtke P.C., Chicago, IL, for trustee.

David S. Yen, Legal Assistance Foundation of Chicago, Chicago, IL, for Debtor.

## MEMORANDUM OPINION

PAMELA S. HOLLIS, Bankruptcy Judge.

This matter comes before the court on the chapter 7 trustee's Application to Employ Attorneys. Trustee Alexander S. Knopfler (hereinafter "Knopfler") wants to employ counsel to help him sell the Debtor's house. Debtor Renee Jackson opposes the retention, arguing that the value of her home is too low to produce any funds for the chapter 7 estate. The Debtor further contends that Knopfler cannot question the value of her home, as it was conclusively determined in Debtor's prior chapter 13 case. Debtor relies on 11 U.S.C. § 348(f)(1)(B) of the Bankruptcy Code, which states that valuations of property in a chapter 13 case shall apply in the converted case. Debtor's home was not explicitly valued by the bankruptcy court during the chapter 13 case, but the Debtor did assign a value to the home in her schedules.

The question raised here is whether the bankruptcy court's order confirming the Debtor's plan valued the Debtor's home implicitly, in the amount scheduled by her, even though no party objected to the value listed on her schedules and the bankruptcy court did not consider the issue or make any express valuation of the home. As discussed below, confirmation of a chapter 13 plan, alone, does not transform the Debtor's scheduled residence value into a judicial finding of valuation that is binding against a chapter 7 trustee. Accordingly, the Trustee's application to employ attorneys will be granted.

## BACKGROUND

On August 25, 2000, Renee Jackson filed for relief under chapter 13 of the Bankruptcy Code. Jackson scheduled the value of her residence (a condominium unit in Chicago) at $37,000. She scheduled secured claims of $2,620 for condominium assessments and $33,000 for a mortgage held by Harris Trust & Savings Bank. Jackson also claimed a homestead exemption of $7,500, as to which no objections were filed.

On November 13, 2000, the bankruptcy court confirmed Jackson's original chapter 13 plan, which provided for a 10% dividend to unsecured creditors. Her first amended plan was confirmed on May 28, 2002, and it reduced the monthly payments and increased the length of the plan. On March 19, 2004, Jackson filed a notice converting her chapter 13 case to chapter 7. Knopfler contends that recent sales establish that Jackson's home is or was worth substantially more than the $37,000 value listed in her schedules.

## LEGAL DISCUSSION

Section 327(a) of the bankruptcy code provides that a trustee may employ one or more disinterested attorneys, accountants or other professionals to "... represent or assist the trustee in carrying out the trustee's duties under this title." Such duties include investigating the financial affairs of the debtor and liquidating property of the estate. 11 U.S.C. §§ 704 and 363. The only ground advanced in opposition to the Knopfler's motion to employ is that the value of Jackson's home was fixed in the prior chapter 13 case by operation of 11 U.S.C. § 348(f).

### I.  Section 348(f)'s Purpose and Policy

Because Jackson's case converted from chapter 13 to chapter 7, 11 U.S.C. § 348 applies. This section of the Bankruptcy Code specifically addresses the effect of

conversion from chapter 13 to chapter 7 on property of the estate:

Except as provided in paragraph (2), when a case under chapter 13 of this title is converted to a case under another chapter under this title—

(A) property of the estate in the converted case shall consist of property of the estate, as of the date of filing of the petition, that remains in the possession of or is under the control of the debtor on the date of conversion; and

(B) valuations of property ... in the chapter 13 case shall apply in the converted case, ...

11 U.S.C. § 348(f)(1).

■ Clearly Jackson's house is property of the estate in this converted case under § 348(f)(1)(A), since she owned it at the time of her original chapter 13 case. What is at issue here is the second part of the statute, § 348(f)(1)(B), providing that valuations of property in the prior chapter 13 apply in the converted case. The purpose of this provision was explained in *In re Wegner*, 243 B.R. 731, 734 (Bankr.D.Neb. 2000) ("Section 348(f)(1)(B) assures that property of a successor Chapter 7 case excludes the amount by which property appreciates during the pendency of a Chapter 13 case."). Under § 348(f), when a case converts from chapter 13 to chapter 7, the debtor is entitled to keep the appreciation that accrued while the chapter 13 was pending. In crafting this amendment, Congress wanted to encourage debtors to try chapter 13 before liquidating assets in chapter 7. Accordingly, the debtor receives credit for the progress made during the chapter 13 case, even if the case converts later. "[T]he legislative history [ ] states that equity created during the chapter 13 case is not property of the estate." 3 Collier on Bankruptcy ¶ 348.07[1] (15th ed. rev'd 2004).

■ The problem here is determining whether Jackson's house was actually "valued" by the court during the chapter 13 case. If not, § 348(f)(1)(B) would not block a chapter 7 trustee from showing that a debtor's home was worth more at the start of the chapter 13 case than the amount assigned in the debtor's schedules. Jackson argues that if no party objects to the home value listed on the schedules prepared for the chapter 13, and a plan is confirmed, the bankruptcy court implicitly valued the home at the number found in the schedules. That argument, however, is not well founded.

## II. Confirmation of a chapter 13 plan does not imply a valuation of the home.

### A. Satisfaction of the "best interests" test in 11 U.S.C. § 1325(a)(4) does not mean the debtor's residence was individually valued by the court.

■ Section U.S.C. § 1325(a) states that the court shall confirm a plan if six tests are met. One of these tests is that property distributed under the plan for each unsecured claim must be at least as much as each claim would receive in a chapter 7 case. 11 U.S.C. § 1325(a)(4). Some decisions concluded that the bankruptcy court had to individually value the home for this "best interests" test to be satisfied. *Warren v. Peterson (In re Warren)*, 298 B.R. 322, at 325 (N.D.Ill.2003). *See also In re Page*, 250 B.R. 465, at 466 (Bankr.D.N.H.2000): ("Inherent in confirming the Chapter 13 plan, the Court must find that the creditor would receive more under the plan than in a Chapter 7 liquidation. 11 U.S.C. § 1325(a)(4). The Court, in confirming the plan and making the above finding, relied on the value of the property as scheduled.").

It is possible that when determining whether a bankruptcy plan meets the so-

called "best interests" test of § 1325(a)(4), the court and the unsecured creditors would rely on the scheduled values of the debtor's property. But such reliance would be on the scheduled value of *all* of the debtor's property, not just one piece of real property. It would include all of the debtor's personal property, such as automobiles, jewelry, cash and any other asset listed on Schedule B. Unless specifically requested by one of the parties in interest, there would be neither the opportunity nor the need to value one item in the bundle of assets belonging to the debtor.

More importantly, the application of the best interests test rarely results in a dollar by dollar comparison of a liquidation under chapter 7 and the proposed repayment plan under chapter 13. An example serves to illustrate this point. Debtor schedules real property with a value of $90,000 and secured claims against the property of $85,000. Debtor also schedules personal property with a value of $3,000. Putting aside exemptions and attorney or trustee fees, in a liquidation there would be $8,000 available for unsecured creditors. Debtor's Schedule J indicates disposable income of $400 per month. Under a 5 year repayment plan in chapter 13, Debtor can pay $(400 \times 12) \times 5 = (4800 \times 5) = \$24,000$.

Obviously creditors will be better off if they are repaid through chapter 13. But the court need not determine the actual value of the real property in order to make that finding as long as the creditors are satisfied with the amount of disposable income proposed to be paid under the plan. In fact, the debtor could have scheduled the property with a value anywhere between $0 and $105,999, and creditors would still be better off in a chapter 13 without *any* inquiry into whether that scheduled value is correct. There would be no finding that the fair market value of the real property is $90,000. The *only* finding is that as between all the assets available to creditors in a chapter 7 and the disposable income available to creditors in a chapter 13, disposable income is greater.

### B. Mortgage lenders get paid in full regardless of the value of their collateral.

If confirmation implicitly values the home, crafty debtors are encouraged to file a chapter 13 case, lowball the house's value, convert to a chapter 7, and argue that the trustee cannot sell the residence. This strategy could succeed because parties avoid the expense of litigating over the house value when it does not matter. Home mortgage lenders, who generally have a first priority lien on the real property, receive preferential treatment in a chapter 13. See 11 U.S.C. § 1322(b)(2) (a chapter 13 plan may not modify the rights of holders of claims "secured only by a security interest in real property that is the debtor's principal residence"). In chapter 7 cases,

> a claim secured by debtor's home is allowed as a secured claim only to the extent of property value. Therefore, both the Chapter 7 debtor and home mortgage holder have a financial incentive to dispute and, if necessary, adjudicate the value of the debtor's residence.... On the other hand, these financial incentives do not exist before conversion to Chapter 7 from Chapter 13 because .... [a] Chapter 13 debtor is prohibited from modifying the rights of claims secured solely by debtor's residence. In a Chapter 13 case, the home mortgage must be paid in full and it may not be bifurcated or stripped down under § 506.

*Wegner*, 243 B.R. at 736.

In chapter 13, the debtor's house is usually not going to be sold. That feature is one of the main attractions of chapter 13.

But the condition under which a debtor is able to retain his house is that he must continue to pay the mortgage holder even if the amount of the mortgage loan exceeds the value of the house. Neither the chapter 13 debtor nor the lender have any incentive to accurately value the home, because it simply doesn't matter-the mortgage holder will continue to receive its monthly payments in exchange for the debtor's right to remain in the house. As long as the debtor's plan makes the required mortgage payments, the lender is unlikely to object to confirmation.

At confirmation other creditors may be satisfied with the debtor's available disposable income, and the secured lender may be uninterested in questioning real estate value because its claim is not being modified by the plan. The future chapter 7 trustee is the party most interested in the actual value of an individual debtor's home. But at the time of confirmation, that trustee is not yet a participant in the case.

In this district, there are several hundred chapter 13 matters on each court's call for the day. There are usually well over fifty confirmation hearings heard at that time. The reality is that this court simply does not consider or rely on the value of each case's individual assets as scheduled by debtors prior to confirmation, if there are no objections to confirmation by creditors or the chapter 13 trustee. If confirmation of a chapter 13 plan creates a legal fiction that the scheduled value of the debtor's house is accurate, then the chapter 7 trustee, the party most interested in the actual value of the home, is denied the opportunity to be heard on the accuracy of the value scheduled by the debtor during the chapter 13.

### III. Jackson's house was not valued in her chapter 13 case.

This court previously considered whether there was a valuation of an automobile in a chapter 13 case that converted to chapter 7, when the debtor sought to redeem his automobile in the chapter 7 case by paying the creditor the amount of its allowed secured claim. *In re Willie L. Davis,* 300 B.R. 898 (Bankr.N.D.Ill.2003). As the court noted then,

> "Section 348(f) does not define what constitutes a valuation." *In re Page,* 250 B.R. 465, 466 (Bankr.D.N.H.2000). Several courts have found that a confirmed plan is an implicit valuation of the property of the estate. *See Warren v. Peterson (In re Warren),* 298 B.R. 322 (N.D.Ill.2003); *In re Slack,* 290 B.R. 282 (Bankr.D.N.J.2003); *Page,* 250 B.R. 465. *See also In re Kuhlman,* 254 B.R. 755 (Bankr.N.D.Cal.2000).

*Davis,* 300 B.R. at 900. In *Davis* the court did not need to follow this line of precedent regarding implicit valuation because Davis's confirmed plan *explicitly* valued the lender's allowed secured claim.

In contrast to *Davis,* there was no explicit valuation of Jackson's home other than the value she assigned to it in her schedules. However, Jackson urges this court to follow the cases cited above and hold that any time a plan is confirmed, the values of individual assets scheduled by the debtor are transformed into judicial valuations, precluding any actual hearings in a subsequent chapter 7 regarding the real value of the property. This court declines to follow these cases.

### A. It is not necessary to hold that confirmation implicitly values individual assets at scheduled amounts to effectuate the policy behind § 348.

In concluding that confirmation constitutes an implicit valuation, some courts relied on the legislative history to the 1994

amendments that brought § 348(f) into the Bankruptcy Code:

> Congress sought to encourage debtors to reorganize their affairs through chapter 13 rather than to immediately liquidate their property under chapter 7. Section 348(f) was added to the bankruptcy code to protect debtors such as Warren from the risk of losing additional property if they seek to reorganize under chapter 13
>
> .... Thus, recognizing implicit valuations is consistent with congressional intent as it encourages debtors to file chapter 13.

*Warren,* 298 B.R. at 326.

However, implicit valuation has nothing to do with the Congressional policy of encouraging filings under chapter 13. Instead, it is the assurance that debtors may keep any appreciation of their property during the chapter 13 case that promotes reorganization over liquidation. If the judicial gloss of implicit valuation becomes binding precedent, savvy debtors may purposely underestimate the value of real property on their schedules, stay in chapter 13 long enough to confirm a plan, and then convert to chapter 7 to capture the "appreciation." Such a result undermines the policy of protecting appreciation by encouraging dishonest appraisals of property value.

To realize the Congressional intent of protecting any appreciation during the chapter 13 case, the bankruptcy court can simply hold a valuation hearing at or near the time of a proposed sale in the chapter 7 to determine what the real property was worth when the chapter 13 petition was originally filed. The court could refuse to approve any sale proposed by the trustee if the property had insufficient equity at the start of the chapter 13 case and/or had not appreciated sufficiently after conver-

sion. This result fully comports with the intent of Congress.

## B. Express judicial valuations pose no greater threat to judicial economy.

The policy of judicial economy was also offered in support of the idea that confirmation is an implicit valuation:

> Establishing the valuation of property at an early stage in the proceedings ensures both stability and finality. Valuations need not be re-examined if the case converts from chapter 13 to chapter 7. Determining the present value of property, such as real estate, is already a complicated issue, and calculating the historic value of property is even more complicated. Holding that the confirmation of the chapter 13 plan constitutes an implicit valuation[ ] under section 348(f) simplifies this process by establishing valuations at the start of the bankruptcy proceeding. Were this Court to reject implicit valuations, debtors would be required to request explicit judicial valuations of all of their scheduled property before confirmation-injecting considerably more time and expense into the process-in order to rely on the protection provided by section 348(f).

*Warren,* 298 B.R. at 326.

But rejection of implicit valuations does not require debtors "to request explicit judicial valuations of all of their scheduled property before confirmation." Section 348(f)(1)(B) states that "valuations of property and of allowed secured claims in the chapter 13 case shall apply in the converted case ...". The statute does not provide that the valuation must be accomplished *during* the chapter 13 case. Instead, if and when the question of value arises, the bankruptcy court must make a determination of the property's value *in* chapter 13. That question may arise, and

in fact is most likely to arise, after the case has converted to chapter 7 and a trustee needs to know how much equity can be captured for creditors, or the home mortgage lender is faced with bifurcation of its claim under § 506(a).

To the extent judicial economy is a legitimate basis for construing the best meaning of a statute, it is more efficient to conduct valuations only when required. As noted above, debtors would not have to demand valuation hearings during the chapter 13 to enjoy the protection of § 348. The value of the property as of the start of the chapter 13 can be judicially determined following conversion to chapter 7, if it ever becomes an issue. On the other hand, ruling that every confirmation is an implicit valuation of all scheduled assets requires Chapter 13 trustees or the United States Trustee to request valuation hearings whenever they disagree with the debtor's scheduled value of the house, even when the creditors support confirmation, to preserve the rights of the future chapter 7 trustee to realize on the actual equity that existed at the time the chapter 13 was filed, in contrast to the equity created during the chapter 13 case. Since implicit valuations encourage parties to request actual hearings when none are required, (as opposed to the converse where it is suggested the debtors would request hearings if there was no implicit rule), there is no efficiency gain resulting from the rule that confirmation is an implicit valuation.

Additionally, contrary to the suggestion that valuations done at a later stage of a case are difficult, bankruptcy courts are well-equipped to value property at any stage of the proceeding and are often called upon to do so. Bankruptcy courts must frequently value property pursuant to § 506(a) "in light of the purpose of the valuation and of the proposed disposition or use of such property." Valuations un-

der § 506(a) may be "made under Chapter 7's redemption provision, 11 U.S.C. § 722, and Chapter 13's cramdown provision, 11 U.S.C. § 1325(a)(5)(B)." *Smith v. Household Automotive Finance Corp.*, 313 B.R. 267 (N.D.Ill.2004) (determining the proper valuation standard and remanding the matter to the "experienced bankruptcy judge" for valuation "consistent with both the law and his common sense approach to this dispute").

Valuation may also be determined on an accelerated schedule in the context of a motion for relief from stay under § 362. According to § 362(e), the stay is automatically terminated thirty days after a request for relief is made, with exceptions made for concluding a final hearing, compelling circumstances or the consent of the movant. A bankruptcy court must be prepared to make swift findings and rulings on the valuation of property in the context of stay relief.

The need for historical valuations is not uncommon either. For example, when determining whether a prepetition transfer may be avoided as preferential, the court must determine that the transfer was made while the debtor was insolvent. 11 U.S.C. § 547(b)(3). Insolvency is a "financial condition such that the sum of such entity's debts is greater than all of such entity's property, at a fair valuation ...". 11 U.S.C. § 101(32)(A). Proceedings to avoid preferential transfers are generally litigated years after the transfer has occurred. Although insolvency is not always a disputed issue, *see* § 547(f), if it is the bankruptcy court must value the debtor's property at the time of the transfer, years after the fact.

Significantly, finding that confirmation is an implicit valuation tips the balance of debtor and creditor interests in bankruptcy too far toward the debtor, because it rewards debtors who schedule property with a deliberately low valuation, get their

plan confirmed, and later convert to chapter 7. If the house was not expressly valued during the chapter 13 case, the court can decide the value of the home as of the commencement of the chapter 13 case, during the chapter 7. Creditors would be entitled to the equity that existed at the beginning of the chapter 13 case while debtors retain appreciation that occurs during the chapter 13 case. In seeking to sell the home, the chapter 7 trustee bears the risk that the court will conclude that most all of the equity was created during the chapter 13 case and not approve the sale. This approach implements the policy of crediting debtors for progress in the chapter 13 case, while preserving the actual equity that was available at the start of the chapter 13 case for creditors. A proper balance between competing interests is struck by allowing the question of valuation to remain unanswered unless a chapter 7 trustee seeks to administer assets and the debtor contends that there is no equity beyond the amount created during the chapter 13 case.

### IV. Conclusion

Since confirmation of Jackson's chapter 13 plan did not result in an implicit valuation of her home, Knopfler is not bound by the value listed in the schedules and may employ attorneys to assist him in the sale of the house and completion of other routine duties as outlined in § 704 of the bankruptcy code. The court will approve a sale only if Jackson's scheduled value was inaccurate and there was actual equity available to creditors at the start of the chapter 13 case, or if Knopfler establishes that Jackson's conversion was in bad faith, since § 348(f)(1)(B) does not apply if Jackson's case was converted in bad faith. *See* 11 U.S.C. § 348(f)(2).