**In re Gerald Adolphus LYNCH and Doris Mae Gill, Debtors.**

**John T. Kendall, Chapter 7 Trustee, Appellant,**

v.

**Gerald Adolphus Lynch; Doris Mae Gill, Appellees.**

**BAP No. NC–06–1223–DBPA.**

**Bankruptcy No. 05–43135–RN.**

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted Nov. 17, 2006.

Filed Jan. 11, 2007.

Eric A. Nyberg, Kornfield, Paul, Bupp & Nyberg, Oakland, CA, for Appellant.

Stanley A. Zlotoff, Bluer & Zlotoff, San Jose, CA, for Appellees.

Before: DUNN, BRANDT and PAPPAS, Bankruptcy Judges.

## OPINION

DUNN, Bankruptcy Judge.

The chapter 7 trustee appeals an order compelling him to abandon debtors' residence. We REVERSE and REMAND.

### FACTS

Gerald Adolphus Lynch and Doris Mae Gill ("debtors") filed a joint chapter 13 [1] petition on June 8, 2005, together with the required schedules. In their schedules, the debtors valued their residence at $560,000, subject to a deed of trust held by Downey Savings Bank in the approximate amount of $422,000, and to the debtors' $150,000 homestead exemption. The debtors' chapter 13 plan ("Confirmed Plan") was confirmed without opposition by order entered July 27, 2005. When the debtors were no longer able to perform the Confirmed Plan, the case was converted, on their motion, to chapter 7 on January 20, 2006.

Asserting that the value of the residence was $669,000, John T. Kendall, the chapter

---

1. Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330, and to the Federal Rules of Bankruptcy Procedure, Rules 1001–9036, as enacted and promulgated prior to the effective date (October 17, 2005) of most of the provisions of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub.L. 109–8, April 20, 2005, 119 Stat. 23 ("BAPCPA").

7 trustee ("Trustee"), obtained an order authorizing him to employ counsel to assist in the sale of the debtors' residence. Because he anticipated that such a sale would result in a distribution to creditors, the Trustee requested that a claims bar date be set in the chapter 7 case. In response, the debtors moved to compel the Trustee to abandon the residence, arguing pursuant to § 554(b) that the residence was of *inconsequential value and benefit to the estate.* The bankruptcy court granted the motion to compel abandonment, holding that in connection with confirmation of the plan, the residence had been implicitly valued in the amount scheduled by the debtors, and pursuant to § 348(f)(1), that value was binding on all the parties upon conversion of the case to chapter 7. The Trustee filed this timely appeal.

## JURISDICTION

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(1). We have jurisdiction over this appeal pursuant to 28 U.S.C. § 158(a)(1).

## ISSUE

Whether an implied valuation of the debtors' residence occurred in conjunction with confirmation of the Confirmed Plan, binding on a chapter 7 trustee in a converted case.

## STANDARD OF REVIEW

■ We review a bankruptcy court's interpretation of the Bankruptcy Code de novo. *See Einstein/Noah Bagel Corp. v. Smith (In re BCE West, L.P.)*, 319 F.3d 1166, 1170 (9th Cir.2003).

## DISCUSSION

1. A Valuation of the Residence Made in the Chapter 13 Case Is Binding on the Trustee.

■ Any valuation of the debtors' residence that was made in a chapter 13 case applies in the chapter 7 case upon conversion.

> Except as provided in paragraph (2), when a case under chapter 13 of this title is converted to a case under another chapter under this title—
>
> (A) property of the estate in the converted case shall consist of property of the estate, as of the date of filing of the petition, that remains in the possession of or is under the control of the debtor on the date of conversion; and
>
> (B) valuations of property and of allowed secured claims in the chapter 13 case shall apply in the converted case.

11 U.S.C. § 348(f)(1).

In this case, the debtors scheduled their residence at a value of $560,000. No one challenged that value in the context of plan confirmation or otherwise while the case was pending in chapter 13. In fact, after an investigation of recent sales in the area of the debtors' residence, the chapter 13 trustee concluded that the debtors' valuation of their residence in their schedules was correct.

Because no party raised any objection to confirmation, the bankruptcy court confirmed the debtors' chapter 13 plan without a hearing. In its order confirming the Confirmed Plan, the bankruptcy court made the requisite findings pursuant to § 1325(a), including a finding that:

> The value, as of the effective date of the Plan, of property to be distributed under the Plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the Debtor were liquidated under Chapter 7 of this title on such date[.]

The question before us is whether the explicit finding made in the confirmation

order pursuant to § 1325(a)(4) was also an implicit finding that the value of the debtors' residence was $560,000 as scheduled, i.e., an implicit valuation.

## 2. How Courts Have Approached the Issue.

The majority of courts that have considered the issue have held that, in the absence of a contested valuation proceeding, the order confirming a chapter 13 plan incorporates an implicit finding that the value of the debtor's residence is the value at which the debtor scheduled the residence. *See, e.g., Warren v. Peterson*, 298 B.R. 322 (N.D.Ill.2003); *In re Niles*, 342 B.R. 72 (Bankr.D.Ariz.2006); *In re Slack*, 290 B.R. 282 (Bankr.D.N.J.2003); *In re Page*, 250 B.R. 465 (Bankr.D.N.H.2000).

Three primary rationales have been advanced for the majority position. First, when the bankruptcy court concludes in the confirmation order that the value of property to be distributed under the plan to unsecured creditors is not less than they would receive in a chapter 7 liquidation, as required pursuant to § 1325(a)(4), if there is no explicit valuation of the debtor's property in a contested proceeding, the bankruptcy court must rely on the scheduled values of the debtor's assets. If the chapter 13 trustee or unsecured creditors believe that the debtor's property is valued too low in the schedules, they have the opportunity to object prior to confirmation. *Warren v. Peterson*, 298 B.R. at 325–26.

Second, treating the confirmation order as incorporating an implicit valuation of property appears consistent with the legislative history of § 348(f)(1).

> This amendment would clarify the Code to resolve a split in the case law about what property is in the bankruptcy estate when a debtor converts from chapter 13 to chapter 7. The problem arises because in chapter 13 . . . , any property acquired after the petition becomes property of the estate, at least until confirmation of the plan. Some courts have held that if the case is converted, all of this after-acquired property becomes part of the estate in the converted chapter 7 case, even though the statutory provisions making it property of the estate do not apply to chapter 7. Other courts have held that the property of the estate in a converted case is the property the debtor had when the original chapter 13 petition was filed.
>
> These latter courts have noted that to hold otherwise would create a serious disincentive to chapter 13 filings. For example, a debtor who had $10,000 equity in a home at the beginning of the case, in a State with a $10,000 homestead exemption, would have to be counseled concerning the risk that after he or she paid off a $10,000 second mortgage in the chapter 13 case, creating $10,000 in equity, there would be a risk that the home could be lost if the case were converted to chapter 7 (which can occur involuntarily). If all of the debtor's property at the time of conversion is property of the chapter 7 estate, the trustee would sell the home, to realize the $10,000 in equity for the unsecured creditors and the debtor would lose the home.

H.R.Rep. No. 103–835 at 57 (1994), *as reprinted in* 1994 U.S.C.C.A.N. 3340, 3366. *See, e.g., Warren v. Peterson*, 298 B.R. at 326 n. 1 ("Section 348(f) was adopted to ensure that property, such as Warren's residence, would not be liquidated as a result of converting to chapter 7."); and *In re Wegner*, 243 B.R. 731, 734 (Bankr. D.Neb.2000) ("Section 348(f)(1)(B) assures that property of a successor Chapter 7 case excludes the amount by which proper-

ty appreciates during the pendency of a Chapter 13 case.").

Finally, treating a chapter 13 confirmation order as incorporating an implicit valuation of the debtor's property arguably serves judicial economy.

Establishing the valuation of property at an early stage in the proceedings ensures both stability and finality. Valuations need not be re-examined if the case converts from chapter 13 to chapter 7. Determining the present value of property, such as real estate, is already a complicated issue, and calculating the historic value of property is even more complicated.

*Warren v. Peterson,* 298 B.R. at 326.

One court has rejected the implicit valuation concept. *In re Jackson,* 317 B.R. 511, 513 (Bankr.N.D.Ill.2004). The *Jackson* court concluded that the provisions of § 348(f)(1)(B) and congressional intent could be met by a valuation made, if necessary, after a chapter 13 case has been converted to chapter 7.

[T]he bankruptcy court can simply hold a valuation hearing at or near the time of a proposed sale in the chapter 7 to determine what the real property was worth when the chapter 13 petition was originally filed. The court could refuse to approve any sale proposed by the trustee if the property had insufficient equity at the start of the chapter 13 case and/or had not appreciated sufficiently after conversion.

*Id.* at 516.

The *Jackson* analysis has the attraction of avoiding the reliance, inherent in the implicit valuation cases, on a fictional valuation based solely upon the value in the debtors' schedules. In this case, while it eventually was persuaded to accept the debtors' argument, the bankruptcy court expressed concern about the implications

of relying on a "valuation" that never occurred:

But, you know, when you think about it, here's the problem. I find this case law disturbing because it's obvious that—to me, that nobody—if there's no objection, and if—supposing you've got a hundred percent plan in a chapter 13 case and the debtor values—low-balls the value of the house. There's not an incentive really for a chapter 13 trustee to object. There's not any incentive obviously for creditors to object. So when I confirm that plan, under this, I've made an implicit valuation when nothing of the kind has really happened.

Transcript of June 7, 2006 Hearing, page 4, lines 10–20.

██ Ultimately, we find the *Jackson* approach more logically compelling because it avoids reliance on the fiction that the court has determined the value of the debtors' residence in an uncontested chapter 13 confirmation. Determining that the "best interest" test of § 1325(a)(4) has been met involves an evaluation of what creditors would receive in a hypothetical chapter 7 liquidation of all of a debtor's assets, not just the residence. Where there is no evidence that the court even looked at the scheduled value of the debtor's residence prior to confirming a chapter 13 plan, it is impossible to determine if the court considered the relative values of the debtor's scheduled assets, including the residence, in deciding that the "best interest" test was met.

In addition, we believe it is the *Jackson* approach that better serves judicial economy by recognizing that valuation determinations need be made only when required in the context of contested proceedings. Section 348(f)(1)(B) does not require that a valuation occur while the chapter 13 case is pending. In contrast, if, as the debtors contend, parties are bound to the debtors'

values by confirmation of a plan, prudent chapter 13 trustees and unsecured creditors may demand that debtors produce actual valuation evidence at confirmation, even though the valuation may not necessarily impact the amount to be paid to creditors, solely to protect the creditors' rights in the event of a subsequent conversion.

Endorsing implicit valuation in connection with confirmation of chapter 13 plans, especially of residential real estate, ignores the realities of the bankruptcy process. Debtors lack any motivation to list the values of assets in their schedules at any higher amounts than necessary to satisfy the requirements of good faith. Mortgage lenders have little reason to care about the scheduled values of houses; their claims generally must be paid without regard to the scheduled values. And unsecured creditors are primarily concerned about the extent of the debtor's disposable income and the amounts to be distributed on their claims. If a plan proposes what are perceived to be sufficiently generous payments to unsecured creditors, they will pay little attention to the debtor's position concerning the values of assets, since those assets will not be liquidated. Finally, and perhaps most important, bankruptcy courts, whose chapter 13 calendars may include several dozen cases in a single session, cannot be expected to consider and rely specifically upon the values placed by debtors on their homes and other assets. The notion that the bankruptcy court makes a reasoned decision in confirming an uncontested chapter 13 plan is patently unrealistic. A chapter 13 trustee may look beyond debtors' scheduled residence values in selected cases. However, chapter 7 trustees generally are motivated, on behalf of the unsecured creditors collectively, to ensure that true market values are assigned to the debtor's assets. As a result, it makes sense that a valuation

occur, if necessary, in the converted chapter 7 case.

The *Jackson* court recognized that in adopting the amended version of § 348(f)(1) in 1994, Congress intended to encourage chapter 13 filings rather than chapter 7 liquidations. *Jackson*, 317 B.R. at 516. The *Jackson* court further found nothing in its approach that was inconsistent with that policy.

> [I]t is the assurance that debtors may keep any appreciation of their property during the chapter 13 case that promotes reorganization over liquidation. If the judicial gloss of implicit valuation becomes binding precedent, savvy debtors may purposely underestimate the value of real property on their schedules, stay in chapter 13 long enough to confirm a plan, and then convert to chapter 7 to capture the "appreciation." Such a result undermines the policy of protecting appreciation by encouraging dishonest appraisals of property value.

*Id.*

3. In a Case Converted from Chapter 13 to Chapter 7, the Value of the Residence on the Chapter 13 Petition Date Controls.

■ In this case, the Trustee seeks to sell the debtors' residence in hopes of realizing approximately $43,000 in net proceeds to the chapter 7 estate and creditors, based upon February 2006 values. However, the relevant valuation date for purposes of § 348(f)(1)(B) is the chapter 13 filing date, June 8, 2005. *See Jackson*, 317 B.R. at 516; and *In re Wegner*, 243 B.R. at 734.

There is nothing in the record indicating that the value of the debtors' residence on the chapter 13 petition date was any higher than the $560,000 value that they scheduled. In fact, the chapter 13 trustee's

analysis confirmed that the debtors had not undervalued their residence.

Excluding equity resulting from debtors' payments on loans secured by their residence and property appreciation subsequent to their chapter 13 filing in a case converted to chapter 7 serves the congressional purpose of encouraging chapter 13 reorganizations over chapter 7 liquidations, as reflected in the legislative history. *See* Section 2 *supra.* That interpretation is buttressed by the language of § 348(f)(2), that provides, in contrast to § 348(f)(1)(B), if a debtor converts a chapter 13 case to chapter 7 in bad faith, "the property in the converted case shall consist of the property of the estate *as of the date of conversion.*" (Emphasis added).

If Congress intended in § 348(f)(1)(B) that, in the absence of a contested valuation proceeding in chapter 13, the chapter 7 trustee would capture postpetition appreciation upon conversion, the "bad faith" provision in § 348(f)(2) would appear to be unnecessary.[2] The record does not reflect any allegation that the debtors filed either their chapter 13 petition or the Confirmed Plan in bad faith. If, on remand, the Trustee determines that, based on a retrospective valuation as of the chapter 13 petition date, selling the debtors' residence would result in no meaningful distribution to unsecured creditors, he can acquiesce to abandonment.

## CONCLUSION

The bankruptcy court erred in granting the debtors' motion to compel abandonment of their residence by the Trustee in the absence of a valuation determined as of the chapter 13 petition date. Accordingly, we REVERSE and REMAND.

---

2. In BAPCPA, with its focus on debtor personal responsibility, § 348(f)(1)(B) has been amended to provide that "valuations of property...in [a] chapter 13 case" shall not apply "in a case converted to a case under chapter 7."