FILED
United States Court of Appeals
Tenth Circuit

August 14, 2018

Elisabeth A. Shumaker
Clerk of Court

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

In re: MARK A. TAYLOR,

  Debtor.

------------------------------

WILLIAM F. SANDOVAL
IRREVOCABLE TRUST,

  Appellant,

v.

MARK A. TAYLOR.

  Appellee.

No. 17-1241

_____

**Appeal from the United States Bankruptcy Court
for the District of Colorado
(Bankruptcy Case No. 1:15-BK-20255-MER)**

_____

Joseph P. Stengel, Evans Case, LLP, Denver, Colorado, for Appellant.

Keri L. Riley, Kutner Brinen, P.C., Denver, Colorado (Jeffrey S. Brinen, Kutner Brinen, P.C., Denver, Colorado, with her on the briefs), for Appellee.

_____

Before **LUCERO**, **PHILLIPS**, and **MORITZ**, Circuit Judges.

_____

**LUCERO**, Circuit Judge.

_____

We are presented in this appeal with a question of statutory interpretation. Debtor Mark Taylor seeks to avoid a set of liens that the William F. Sandoval Irrevocable Trust (the "Trust") recorded on his home, which Taylor jointly owns with his former wife. The Bankruptcy Code provides that a debtor may avoid certain liens that impair an exemption, and sets forth a formula to determine the extent to which an exemption is impaired. 11 U.S.C § 522(f). We must determine how that formula applies to a homestead exemption when a home is jointly owned with a non-debtor. Based on the plain language of § 522(f) and the structure of the Bankruptcy Code as a whole, we conclude that the impairment calculation must use the value of other liens on the home corresponding to the debtor's percentage of ownership, rather than the full amount of the liens. Exercising jurisdiction under 28 U.S.C. § 158(d)(2)(A), we reverse and remand.

## I

In 2006, William Sandoval established the Trust and named Taylor trustee. Taylor misappropriated a large amount of money from the Trust, eventually resulting in three state court judgments against Taylor in favor of the Trust, in the amounts of $384,930.18, $53,090.48, and $23,452.20. Taylor never appealed any of the judgments.

Taylor owns an undivided 50 percent interest in a residential property located in Littleton, Colorado (the "Residence"). Taylor's ex-wife, Laura Taylor, owns the remainder. The Trust recorded liens on the Residence totaling $461,472.86. It

2

subsequently attempted to foreclose on the Residence, and obtained an appraisal valuing the home at $962,000.

In September 2015, Taylor filed for bankruptcy under Chapter 13 of the Bankruptcy Code. Laura is not a debtor in the bankruptcy proceeding. In his amended schedules, Taylor listed the value of the Residence as $560,000, and his interest in it as $280,000. The Trust filed an adversary complaint arguing that its judgment liens are non-dischargeable under 11 U.S.C. § 523(a)(4) and (a)(6). On Taylor's motion, the case was converted to a Chapter 7 bankruptcy proceeding.

Taylor moved to avoid the Trust's liens under § 522(f), arguing that the sum of the liens on the Residence and his homestead exemption exceeded the value of his interest in the property. The parties agreed that Taylor is entitled to a homestead exemption of $37,500 under Colorado law. The Residence is encumbered by several debts: a mortgage in favor of U.S. Bank, a homeowners' association lien, and tax liens. Taylor proposed the following calculation:

| | |
|---|---|
| Judgment liens in favor of the Trust: | $461,472.86 |
| Homestead exemption: | $ 37,500.00 |
| All other liens on the Residence: | $485,345.12 |
| Total: | $984,317.98 |
| Less the value of Taylor's interest: | ($280,000.00) |
| Amount of impairment: | $704,317.98 |

Because the impairment exceeds the amount of the Trust's liens, Taylor argued that the Trust's liens should be avoided in their entirety. The Trust countered that the calculations should include only half of the value of the other liens on the Residence

3

because Taylor possessed only a 50 percent interest. It also argued that the value of the Residence was $962,000. The Trust thus proposed the following figures:

| | |
|---|---|
| Judgment liens in favor of the Trust: | $461,472.86 |
| Homestead exemption: | $37,500.00 |
| All other liens on the Residence *.50: | $242,672.56 |
| Total: | $734,268.43[1] |
| Less the value of Taylor's interest: | ($481,000.00) |
| Amount of impairment: | $253,268.43 |

Using this calculation, the Trust would have an enforceable lien in the amount of $208,204.43 (the value of the Trust's judgment liens, less the impairment).

The bankruptcy court noted that, regardless of any disputed valuations as to the Residence or any liens, the case turned on the proper interpretation of § 522(f)(2)(A) in cases in which the debtor shares ownership of real property with a non-debtor. It favored Taylor's interpretation of that provision, under which the value of other liens on the Residence are not discounted by Taylor's proportional share of the Residence. And because the Trust's judgment liens are avoidable in their entirety under that reading, the bankruptcy court granted Taylor's motion to avoid the Trust's judgment liens without resolving the parties' factual disputes.

We granted permission to appeal pursuant to § 158(d)(2)(A). See Woolsey v. Citibank, N.A. (In re Woolsey), 696 F.3d 1266, 1268 (10th Cir. 2012) (noting that § 158(d)(2)(A) "gives us authority to hear appeals straight from the bankruptcy court, leapfrogging over the district court or bankruptcy appellate panel in order to speed up the resolution of dispositive legal questions").

---

[1] These are the numbers provided by the Trust. We note that they appear to include a mathematical error.

## II

The issue on which we granted leave to appeal is one of statutory interpretation, a question of law we review de novo. United States v. Theis, 853 F.3d 1178, 1181 (10th Cir. 2017). The goal of statutory interpretation is to "ascertain the congressional intent and give effect to the legislative will." Ribas v. Mukasey, 545 F.3d 922, 929 (10th Cir. 2008) (quotation omitted). In conducting this analysis, we first turn to the statute's plain language. United States v. West, 671 F.3d 1195, 1199 (10th Cir. 2012). We give undefined terms their ordinary meanings, considering "both the specific context in which the word is used and the broader context of the statute as a whole." Theis, 853 F.3d at 1181.

In determining whether statutory language is ambiguous, we look to "the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." Keller Tank Servs. II, Inc. v. Comm'r, 854 F.3d 1178, 1196 (10th Cir. 2017) (quotation omitted). A statute is ambiguous if it "is capable of being understood by reasonably well-informed persons in two or more different senses." Allen v. Geneva Steel Co. (In re Geneva Steel Co.), 281 F.3d 1173, 1178 (10th Cir. 2002).

Section 522(f) provides that a "debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption." § 522(f)(1). A lien impairs an exemption to the extent that the total of:

(i) the lien;

(ii) all other liens on the property; and

5

(iii) the amount of the exemption that the debtor could claim if there were no liens on the property;

exceeds the value that the debtor's interest in the property would have in the absence of any liens.

§ 522(f)(2)(A).

We must determine how courts should value "all other liens on the property," as used in § 522(f)(2)(A)(ii), with respect to liens recorded on a home that is jointly owned, if only one of the joint owners is a debtor. Put differently, the question is whether the term "all other liens on the property" refers to the total lien amounts as to the entire Residence, or only the lien amounts corresponding to Taylor's half-ownership interest in the Residence. We conclude, based on the plain language of § 522(f) and the structure of the Bankruptcy Code, that the latter approach best effectuates Congressional intent.

The bankruptcy court relied on Zeigler Engineering Sales, Inc. v. Cozad (In re Cozad), 208 B.R. 495 (B.A.P. 10th Cir. 1997), which cursorily reasoned that "all other liens on the property" refers to all liens including those that proportionately belong to a non-debtor joint owner. Id. at 498. A minority of courts have read § 522(f)(2)(A) to reach the same result. See, e.g., In re Biesterveld, No. 7-07-12962 SA, 2008 WL 5157700, at *2 (Bankr. D.N.M. Aug. 15, 2008) (unpublished); In re White, 337 B.R. 686, 690-91 (Bankr. N.D. Cal. 2005).

Other courts have adopted the approach urged by the Trust, including all three circuits to have considered the issue. See Miller v. Sul (In re Miller), 299 F.3d 183,

6

186 (3d Cir. 2002); Lehman v. VisionSpan, Inc. (In re Lehman), 205 F.3d 1255, 1257 (11th Cir. 2000); Nelson v. Scala, 192 F.3d 32, 34 (1st Cir. 1999); see, e.g., All Points Capital Corp. v. Meyer (In re Meyer), 373 B.R. 84, 90-91 (B.A.P. 9th Cir. 2007); In re Powers, No. 14-06943-5-SWH, 2016 WL 3344247, at *3 (Bankr. E.D.N.C. June 7, 2016) (unpublished); In re Ware, 274 B.R. 206, 209 (Bankr. D.S.C. 2001). We conclude that the latter reading is the better one.

The broad purpose of § 522(f) is "protecting the debtor's exempt property." Farry v. Sanderfoot, 500 U.S. 291, 297-98 (1991); see also Nelson, 192 F.3d at 34 ("An expressed purpose of Congress in enacting section 522(f)'s avoidance provision was to prevent unsecured creditors from bypassing exemptions simply by converting their claims into judicial liens and obtaining security interests in otherwise exempt property." (citing H.R.Rep. No. 95-595, 126-27 (1977), reprinted in 1978 U.S.C.C.A.N. 5963, 6087-88)). As the Supreme Court has emphasized, the focus of the statute is "the debtor's interest." Farry, 500 U.S. at 298. Therefore, the provision provides that a debtor may avoid "the fixing of a lien on an interest of the debtor in property." § 522(f)(1)(A). But a judicial lien may be avoided only "to the extent" that it impairs an exemption. § 522(f)(2)(A). "Thus, only that part of a lien which actually interferes with the debtor's homestead exemption may be avoided." Wachovia Bank & Trust Co., N.A. v. Opperman (In re Opperman), 943 F.2d 441, 444 (4th Cir. 1991). If we read the term "property" in § 522(f)(2)(A)(ii) to refer to the debtor's interest, rather than the undivided whole parcel, Congressional intent is effectuated. See Nelson, 192 F.3d at 34 ("This aim—to protect the debtor's

7

exemption—is fully achieved by allowing [the debtor] to avoid the [judicial] liens in part . . . .").

Under Taylor's approach, however, judicial liens would be avoided in excess of the debtor's homestead exemption. See id. at 36. And permitting the avoidance of "liens that do not impair any exemption would directly contradict the language of the statute and consistent interpretations of that language." Powers, 2016 WL 3344247, at *5. "When a debtor has only a fifty percent interest in exempt property . . . but one or more of the outstanding liens apply to the entire property," Taylor's approach "produces an unreasonably high impairment that has the effect of creating additional equity for the debtor at the expense of the lienholder." Kolich v. Antioch Laurel Veterinary Hosp. (In re Kolich), 328 F.3d 406, 409 (8th Cir. 2003). The effect of such a reading is to "extend the protection Congress sought to provide debtors and distort priorities between creditors." Ware, 274 B.R. at 209.

Interpreting the term "property" to refer to Taylor's half interest is also consistent with the Bankruptcy Code as a whole. It generally uses the word "property" to refer to the property of the debtor. See 11 U.S.C. § 541(a)(1) (stating that "property" of the bankruptcy estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case"); see also 28 U.S.C. § 1334(e)(1) (district court has exclusive jurisdiction of "all the property, wherever located, of the debtor"). Moreover, "[f]or property to qualify for an exemption, it must first be part of the bankruptcy estate." Lehman, 205 F.3d at 1256. Interpreting § 522(f) to allow avoidance of a lien based on a portion of that lien that "realistically

should be regarded as someone else's debt even if the debtor may be liable personally" creates an unwarranted incongruity. Miller, 299 F.3d at 186.

Permitting only a proportional calculation of other liens also treats subsection (ii) in a manner symmetrical to the other subsections of the statute. Section 522(f) requires that we count "the value that the debtor's interest in the property would have in absence of any liens" not the full value of the Residence. § 522(f)(2)(a). And it requires consideration of "the amount of the exemption that the debtor could claim if there were no liens on the property." § 522(f)(2)(A)(iii). The Colorado homestead exemption is $75,000, see Colo. Rev. Stat. § 38-41-201(1)(a), but because Taylor possesses only a half interest in the Residence, we use only his proportional share of $37,500 in the impairment calculation. See Pruitt v. Wilson (In re Pruitt), 829 F.2d 1002, 1004 (10th Cir. 1987) (per curiam). To count the full value of all liens while halving the other values would be "comparing apples to oranges." In re Steinke, 522 B.R. 331, 338 (Bankr. D. Colo. 2014).

Examination of the Bankruptcy Code and § 522 reveals that the term "all other liens on the property" is most faithfully read as meaning the quantity of liens shared with a co-debtor fairly attributable to the debtor. We agree with our sibling circuits that

> the correct approach is to view the debtor as owning one half of the property to which one half of the mortgage debt is thus attributable and therefore to regard "property" in subsection (ii) to mean the debtor's interest in the property and then to allocate the lien among the interests in the property proportionately.

Miller, 299 F.3d at 186.[2]

## III

For the foregoing reasons, we **REVERSE** the bankruptcy court's ruling on Taylor's § 522(f) motion and **REMAND** for further proceedings consistent with this opinion.

---

[2] We note that some of the cases adopting the majority view appear to rely on the absurdity doctrine in rejecting the approach urged by Taylor. See, e.g., Lehman, 205 F.3d at 1258 (stating that the minority interpretation "would produce an absurd result and would violate the Congressional intent"). However, the absurdity doctrine properly "applies to unambiguous statutes . . . in only the most extreme of circumstances." United States v. Husted, 545 F.3d 1240, 1245 (10th Cir. 2008). "The absurdity doctrine should not be confused with a useful technique for resolving ambiguities in statutory language." Robbins v. Chronister, 435 F.3d 1238, 1241 (10th Cir. 2006) (en banc). "When statutory language reasonably admits of alternative constructions, there is nothing remarkable about resolving the textual ambiguity against the alternative meaning that produces a result the framers are highly unlikely to have intended." Id. Because we reject the argument that § 522(f) unambiguously requires counting the full value of all liens on the Residence, we conclude that the absurdity doctrine does not apply.