FILED

U.S. Bankruptcy Appellate Panel
of the Tenth Circuit

October 2, 2020

Blaine F. Bates
Clerk

NOT FOR PUBLICATION<sup>*</sup>

# UNITED STATES BANKRUPTCY APPELLATE PANEL

# OF THE TENTH CIRCUIT

_____

IN RE JULIO CESAR BARRERA and
MARIA DE LA LUZ MORO,

Debtors.

_____

SIMON E. RODRIGUEZ, Chapter 7
Trustee,

Appellant,

v.

JULIO CESAR BARRERA and  MARIA
DE LA LUZ MORO,

Appellees.

BAP No. CO-20-003

Bankr. No. 16-13216-EEB
Chapter 7

OPINION

_____

Appeal from the United States Bankruptcy Court
for the District of Colorado

_____

Before **CORNISH**, **MICHAEL**, and **LOYD**, Bankruptcy Judges.

_____

**MICHAEL**, Bankruptcy Judge.

_____

---

\*     This unpublished opinion may be cited for its persuasive value, but is not precedential, except under the doctrines of law of the case, claim preclusion, and issue preclusion. 10th Cir. BAP L.R. 8026-6.

Home ownership lies at the center of the American dream. Chapter 13 of the Bankruptcy Code provides many Americans with a chance to keep their home when all else fails. Unfortunately, not every chapter 13 case is successful. Congress recognized this and gave debtors who can no longer meet their obligations under a chapter 13 plan the opportunity to convert the case to chapter 7, where liquidation of nonexempt assets is contemplated. The question placed before us today is a simple one, presented on a silver platter of stipulated facts: if a homestead appreciates in value while a debtor is striving under chapter 13, and the case is later converted to chapter 7, who is entitled to the increase in value: the debtors, or the chapter 7 trustee? The trial court (the "Bankruptcy Court") ruled for the debtors. The trustee appeals. We affirm.

## I. Factual Background

Julio Cesar Barrera and Maria de la Luz Moro (the "Debtors") filed a chapter 13 petition on April 5, 2016. They listed real property at 6815 Edgewood Way, Highlands Ranch, Colorado (the "Residence"), in Schedule A of their petition with a fair market value of $396,606. There were two liens against the Residence. CitiMortgage Inc. held a first lien of $243,649, and the United States Department of Housing and Urban Development held a second lien of $92,560.[1] The Debtors asserted an uncontested $75,000 homestead exemption in the Residence under Colorado Revised Statutes § 38-41-201. The combination of consensual liens and homestead exemption exceeded the value of the Residence, resulting in no nonexempt equity on the petition date.[2]

---

[1]     *Schedule D*, *in* Appellants' App. at 51 & 52.
[2]     *Schedule C*, *in* Appellants' App. at 48.

The Bankruptcy Court confirmed the Debtors' chapter 13 plan of reorganization (the "Plan") on June 9, 2016. The Plan required the Debtors to cure approximately $4,400 in mortgage arrears and to make postpetition mortgage payments directly to CitiMortgage Inc. The Plan vested all property of the bankruptcy estate in the Debtors upon confirmation.

The Debtors sold the Residence for $520,000 in April 2018. After payment of lienholders, $140,250.63 in remaining proceeds of sale (the "Net Proceeds") was received by the Debtors.[3] The Debtors voluntarily converted their case to chapter 7 shortly thereafter. At the time of conversion, approximately $100,000 of the Net Proceeds remained in a savings account.

Simon Rodriguez, chapter 7 trustee in the Debtors' case (the "Trustee"), filed a motion for turnover on July 5, 2018, seeking turnover of the Net Proceeds in excess of the $75,000 homestead exemption pursuant to 11 U.S.C. § 542[4] (the "Motion for Turnover"). The Debtors objected, arguing none of the Net Proceeds were property of the bankruptcy estate. In order to remove any issue of fact, the Trustee stipulated that the scheduled value of the Residence ($396,606) was its fair market value on the date the chapter 13 petition was filed.[5] The sole issue before the Bankruptcy Court was whether

---

[3]     *Final Settlement Statement* at 2, *in* Appellants' App. at 90.
[4]     All future references to "Bankruptcy Code," "Code," or "§," refer to Title 11 of the United States Code.
[5]     Although the Motion for Turnover did not specify, the Bankruptcy Court made it clear that the Trustee was only seeking turnover of the Net Proceeds that exceeded the allowed $75,000 homestead exemption. Turnover Order at 3, *in* Appellant's App. at 223.

3

the Trustee or the Debtors were entitled to the appreciation in value of the Residence between the date of filing of the chapter 13 and the date of conversion to chapter 7.

The Bankruptcy Court entered an order denying the Motion for Turnover (the "Turnover Order") on January 13, 2020.[6] The Bankruptcy Court concluded § 348(f)(1)(A)'s use of the term "property" is ambiguous. After examining the legislative history of § 348(f), the Bankruptcy Court held that

> According to this legislative history, one of the principal reasons for the enactment of this new provision was Congress' concern that the chapter 7 trustee was getting the postpetition increase in equity in the debtor's home. These statements reflect that a proper interpretation of "property" is the property *as it existed on the petition date*, with all its attributes, including the amount of equity that existed on that date.[7]

The Bankruptcy Court found its interpretation aligned with and advanced Congress's stated intent to not penalize a debtor for filing a chapter 13 case and later converting to chapter 7.[8] Accordingly, the Bankruptcy Court determined that the Debtors had no nonexempt equity in the Residence as of the petition date, and the postpetition increase in value of the Residence was not property of the chapter 7 bankruptcy estate.

---

[6]     *Order Denying Motion for Turnover of Sales Proceeds*, Appellant's App. at 221. The Trustee also filed an adversary proceeding objecting to the Debtors' chapter 7 discharge on the basis the Debtors withheld estate property. On a motion for summary judgment, the Bankruptcy Court held the Net Proceeds were not estate property.
[7]     Turnover Order at 9, *in* Appellant's App. at 229.
[8]     Turnover Order at 10, *in* Appellant's App. at 230.

4

## II.     Jurisdiction & Standard of Review

"With the consent of the parties, this Court has jurisdiction to hear timely-filed appeals from 'final judgments, orders, and decrees' of bankruptcy courts within the [United States Court of Appeals for the] Tenth Circuit."[9] No party elected to have this appeal heard by the United States District Court for the District of Colorado; thus, the parties have consented to our review.

"A decision is considered final if it 'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'"[10] "An order denying turnover of property . . . is a final, appealable order."[11] Therefore, the Turnover Order is a final order for purposes of 28 U.S.C. § 158.

Whether a bankruptcy court correctly applied § 542 to undisputed facts is a question of law reviewed *de novo*.[12] The question of whether postpetition appreciation of a debtor's homestead is property of the bankruptcy estate under § 348(f)(1)(A) also involves a legal conclusion, which we review *de novo*.[13] "*De novo* review requires an

---

[9]      *Straight v. Wyo. Dep't of Trans. (In re Straight)*, 248 B.R. 403, 409 (10th Cir. BAP 2000) (first quoting 28 U.S.C. § 158(a)(1), and then citing 28 U.S.C. § 158(b)(1), (c)(1) and Fed. R. Bankr. P. 8002).

[10]      *In re Duncan*, 294 B.R. 339, 341 (10th Cir. BAP 2003) (quoting *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 712 (1996)).

[11]      *In re Auld*, 561 B.R. 512, 515 (10th Cir. BAP 2017) (citing *In re Ruiz*, 455 B.R. 745, 747-48 (10th Cir. BAP 2011); *In re Graves*, 396 B.R. 70, 72 (10th Cir. BAP 2008), *aff'd as modified*, 609 F.3d 1153 (10th Cir. 2010)).

[12]      *In re Graves*, 396 B.R. at 72 (citing *In re Duncan*, 329 F.3d 1195, 1198 (10th Cir. 2003)).

[13]      *See In re Wise*, 346 F.3d 1239, 1241 (10th Cir. 2003) (citing *In re White*, 25 F.3d 931, 933 (10th Cir. 1994)) (concluding post-petition spousal support was not property of the estate under § 541(a)(5)(B)); *In re Taylor*, 899 F.3d 1126, 1129 (10th Cir. 2018) (providing bankruptcy court's conclusions on statutory interpretation reviewed *de novo*).

independent determination of the issues, giving no special weight to the bankruptcy court's decision."[14]

### III. Discussion

At the heart of this appeal is the Bankruptcy Court's interpretation of § 348(f)(1), which provides,

> [W]hen a case under chapter 13 of this title is converted to a case under another chapter under this title—
>     (A)    property of the estate in the converted case shall consist of property of the estate, as of the date of filing of the petition, that remains in the possession of or is under the control of the debtor on the date of conversion;
>     (B)    valuations of property and of allowed secured claims in the chapter 13 case shall apply only in a case converted to a case under chapter 11 or 12, but not in a case converted to a case under chapter 7 . . . .[15]

The United States Court of Appeals for the Tenth Circuit (the "Tenth Circuit") last considered § 348 almost thirty years ago. In *In re Calder*, the Tenth Circuit applied a prior version of § 348, holding that upon conversion from chapter 13 to chapter 7, all property of the chapter 13 estate, including property acquired postpetition, becomes property of the chapter 7 estate.[16] Since *Calder*, Congress amended § 348 by adding subsection (f).[17]

---

[14]     *Peters v. Clark (In re Bryan)*, 857 F.3d 1078, 1091 (10th Cir. 2017) (citing *Salve Regina Coll. v. Russell*, 499 U.S. 225, 238 (1991)).

[15]     11 U.S.C. § 348(f)(1).

[16]     *In re Calder*, 973 F.2d 862, 866 (10th Cir. 1992) (holding attorney's fees earned after filing a chapter 13 but preconversion to chapter 7 belonged to chapter 7 estate), *overruled by Harris v. Viegelahn*, 575 U.S. 510, 135 S.Ct. 1829, 1837 (2015).

[17]     Bankruptcy Reform Act of 1994, Pub. L. 103-394, § 311, 108 Stat. 4106, 4138 (1994).

The Bankruptcy Reform Act of 1994 addressed the issue of what happens to property a debtor acquires postpetition but prior to conversion through the addition of subsection (f) to § 348. Generally, subsection (f) provides that when a debtor converts a case from chapter 13, the estate in the converted case does not include property acquired after the original petition date.[18] The Supreme Court addressed the implications of § 348(f) in *Harris v. Viegelahn*, where it held wages acquired postpetition ordinarily do not become a part of the chapter 7 estate upon conversion.[19] *Harris v. Viegelahn* effectively overruled *Calder* and established that "[a]bsent a bad-faith conversion, § 348(f) limits a converted Chapter 7 estate to property belonging to the debtor 'as of the date' the original Chapter 13 petition was filed."[20]

### a. Ambiguity in Section 348(f)

The question before this Court is whether § 348(f)'s definition of the phrase "property of the estate" includes postpetition appreciation in value of an asset owned by a debtor on the petition date. The Trustee asserts the Bankruptcy Court erred when it concluded § 348(f)(1)(A)'s use of the term "property" is ambiguous, which allowed the Bankruptcy Court to consider the statute's legislative history. We disagree.

---

[18]     3 Collier on Bankruptcy ¶ 348.07[1] (16th ed. 2020) ("The addition of this subsection clarified that Congress had intended the result reached by cases that had not included in the postconversion chapter 7 estate the property acquired by the debtor during the preconversion chapter 13 case.").

[19]     *Harris*, 135 S.Ct. at 1837 ("Absent a bad-faith conversion, § 348(f) limits a converted Chapter 7 estate to property belonging to the debtor 'as of the date' the original Chapter 13 petition was filed.").

[20]     *Id.*

The Trustee recognizes that "[t]he goal of statutory interpretation is to 'ascertain the congressional intent and give effect to the legislative will.'"[21] The Tenth Circuit has provided ample instruction in the use of legislative history to determine congressional intent as part of statutory interpretation. A court's analysis of congressional intent begins with a statute's plain language, "giv[ing] undefined terms their ordinary meanings, considering 'both the specific context in which the word is used and the broader context of the statute as a whole.'"[22] In addition, "[i]f Congress has spoken *directly* to the issue, that is the end of the matter; the court . . . must give effect to Congress's unambiguously expressed intent."[23] If there is no ambiguity on the face of the statute's language, the analysis ends. However, "[i]f the statute's plain language is ambiguous as to congressional intent, 'we look to the legislative history and the underlying public policy of the statute'" to derive Congress's intent.[24] Statutory language is ambiguous "if it 'is capable of being understood by reasonably well-informed persons in two or more different senses.'"[25]

The plain language of § 348(f)(1)(A) states, "property of the estate in the converted case shall consist of property of the estate, as of the date of filing of the

---

[21]    *In re Taylor*, 899 F.3d 1126, 1129 (10th Cir. 2018) (quoting *Ribas v. Mukasey*, 545 F.3d 922, 929 (10th Cir. 2008)).

[22]    *Id.* (quoting *United States v. Theis*, 853 F.3d 1178, 1181 (10th Cir. 2017)).

[23]    *New Mexico v. Dep't of Interior*, 854 F.3d 1207, 1221 (10th Cir. 2017) (quoting *United Keetoowah Band of Cherokee Indians of Okla. v. U.S. Dep't of Hous. & Urban Dev.*, 567 F.3d 1235, 1240 (10th Cir. 2009)).

[24]    *United States v. Manning*, 526 F.3d 611, 614 (10th Cir. 2008) (quoting *United States v. LaHue*, 170 F.3d 1026, 1028 (10th Cir. 1999)).

[25]    *In re Taylor*, 899 F.3d at 1129 (quoting *Allen v. Geneva Steel Co. (In re Geneva Steel Co.)*, 281 F.3d 1173, 1178 (10th Cir. 2002)).

8

petition."[26] The Trustee asserts "property of the estate" as used in this section includes

"[a]ppreciation in the value of real property."[27] The Trustee explains that because

§ 541(a)(1) includes "all legal or equitable interests of the debtor in property" as property

of the estate and § 541(a)(6) "expressly provid[es] that '[p]roceeds' are a form of

'property,'"[28] the Bankruptcy Code evidences Congress's intent to include appreciated

equity as property of the estate.[29] However, even if we assume the Trustee's reading of

the statute is correct, we are left with the question of the date the court should use to

calculate a debtor's interest in the equity. In the Debtors' case, the equity interest may be

calculated as of the date of the original chapter 13 petition or the date of the conversion to

chapter 7. Because neither § 348(f)(1)(A) nor any other Bankruptcy Code provision

resolve this question, the statute is ambiguous.[30]

The Trustee relies on *In re Hayes*,[31] an opinion from another judge of the District

of Colorado Bankruptcy Court entered shortly before the Turnover Order, to argue

---

[26]     11 U.S.C. § 348(f)(1)(A).
[27]     Appellant's Br. 7.
[28]     *Rajala v. Spencer Fane LLP (In re Generation Res. Co.)*, 964 F.3d 958, 968 (10th Cir. 2020) (quoting 11 U.S.C. § 541(a)(6)).
[29]     This is a fascinating argument, given that the actual legislative history of § 348(f)(1)(A) leads to the opposite conclusion, as discussed *infra*.
[30]     We recognize the courts in *In re Hayes*, No. 15-20727-MER (Bankr. D. Colo. (Mar. 28, 2019) and *In re Goins*, 539 B.R. 510 (Bankr. E.D. Va. 2015) resolve this ambiguity by concluding equity is inseparable from real estate and is thus part of the estate on the petition date. This conclusion discounts the requirement of determining a debtor's equity interest in real property in cases where a debtor claims a homestead exemption, suggesting the real property and equity interests are separable. Furthermore, our analysis does not run afoul of § 348(f)(1)(B), as that subsection allows for valuation as of the conversion date for determining the amount of allowed secured claims.
[31]     No. 15-20727-MER (Bankr. D. Colo. Mar. 28, 2019), *in* Appellant's App. at 186.

9

§ 348(f)(1)(A) is not ambiguous. In *Hayes*, the Bankruptcy Court addressed the issue of postpetition appreciation in value in a case converted from chapter 13 to chapter 7. The *Hayes* court concluded that the plain language of § 348(f)(1)(A) mandated that "postpetition accrual of equity through appreciation in . . . value is not itself a separate interest in property which could be excluded from post-conversion estate property."[32] The bankruptcy judge in *Hayes* reached the opposite result of the bankruptcy judge in this case.

Unfortunately for the Trustee, the decision in *Hayes* illuminates, rather than eliminates, the statutory ambiguity contained in § 348(f). Ambiguity exists when reasonably well-informed individuals reach competing conclusions. We can think of no person more well-informed in the nuances of the Bankruptcy Code than a bankruptcy judge. If two bankruptcy judges do not agree whether postpetition appreciation in value of property belongs to a chapter 7 estate upon conversion, then § 348(f)(1)(A) is open to two or more interpretations.[33] A split on the issue in other jurisdictions also suggests the statute's plain language is ambiguous.[34] Accordingly, the Bankruptcy Court did not err in reviewing the legislative history of § 348(f).

---

[32]     *In re Hayes*, at 14, *in* Appellant's App. at 199.
[33]     *See United States v. Rentz*, 777 F.3d 1105, 1107 (10th Cir. 2015) (noting circuit split on interpretation of 18 U.S.C. § 924(c)(1)(A) led to en banc review) (en banc).
[34]     *Compare In re Lynch*, 363 B.R. 101, 106 (9th Cir. BAP 2007) (holding in a case converted from chapter 13 to 7, the relevant date for determining the value of a debtor's residence is the chapter 13 petition date), *and Pisculli v. T.S. Haulers, Inc. (In re Pisculli)*, 426 B.R. 52, 63 (E.D.N.Y. 2010) (holding creditors not entitled to postpetition appreciation in converted chapter 7), *aff'd*, 408 F. App'x 477 (2nd Cir. 2011), *with In re Goins*, 539 B.R. 510 (Bankr. E.D. Va. 2015) (holding debtor is not entitled to

10

### b. Review of Legislative History

Although the Tenth Circuit cautions against reliance on a federal statute's legislative history in statutory interpretation,[35] it recognizes the directive of the United States Supreme Court allowing the review of legislative history as an "aid to construction of the meaning of words, . . . however clear the words may appear on 'superficial examination.'"[36] There is a caveat: "the weight such history is given in construing a statute may vary according to factors such as whether the legislative history is sufficiently specific, clear and uniform to be a reliable indicator of intent."[37] Under these principles, the Bankruptcy Court did not err in its ultimate conclusion in this case, or in its decision to review the legislative history of § 348(f).

The House of Representatives' Committee on the Judiciary report on the Bankruptcy Reform Act of 1994 (the "House Report") provides insight into the legislative intent behind the amendment to § 348:

> This amendment would clarify the Code to resolve a split in the case law about what property is in the bankruptcy estate when a debtor converts from chapter 13 to chapter 7. The problem arises because in chapter 13 (and chapter 12), any property acquired after the petition becomes property of the estate, at least until confirmation of a plan. Some courts have held that

---

appreciation in property that accrues during chapter 13 case), *and Leo v. Burt (In re Burt)*, No. 09-40016-JJR, 2009 WL 2386102 (Bankr. N.D. Ala. July 31, 2009) (unpublished) (same).

[35]    *Miller v. Comm'r of Internal Revenue*, 836 F.2d 1274, 1281-82 (10th Cir. 1988) (explaining (1) federal courts interpret law instead of drafting it; (2) committee reports are not in front of Congress when voting or the President when signing a bill into law; and Congress and the President rely on the plain meaning of words when enacting legislation).

[36]    *Id.* at 1282 (quoting *United States v. Am. Trucking Ass'ns*, 310 U.S. 534, 543-44 (1940)).

[37]    *Id.*

if the case is converted, all of this after-acquired property becomes part of the estate in the converted chapter 7 case, even though the statutory provisions making it property of the estate do not apply to chapter 7. Other courts have held that property of the estate in a converted case is the property the debtor had when the original chapter 13 petition was filed.

These latter courts have noted that to hold otherwise would create a serious disincentive to chapter 13 filings. For example, a debtor who had $10,000 equity in a home at the beginning of the case, in a State with a $10,000 homestead exemption, would have to be counseled concerning the risk that after he or she paid off a $10,000 second mortgage in the chapter 13 case, creating $10,000 in equity, there would be a risk that the home could be lost if the case were converted to chapter 7 (which can occur involuntarily). If all of the debtor's property at the time of conversion is property of the chapter 7 estate, the trustee would sell the home, to realize the $10,000 in equity for the unsecured creditors and the debtor would lose the home.

This amendment overrules the holding in cases such as Matter of Lybrook, 951 F.2d 136 (7th Cir. 1991) and adopts the reasoning of In re Bobroff, 766 F.2d 797 (3d Cir. 1985). However, it also gives the court discretion, in a case in which the debtor has abused the right to convert and converted in bad faith, to order that all property held at the time of conversion shall constitute property of the estate in the converted case.[38]

Although the House Report does not address the exact issue before this Court, the cases cited therein illuminate the intent behind the reforms.

In *In re Lybrook*, the debtors initially filed a chapter 13. Ten months into the case, they inherited land worth $70,000.[39] After inheriting the land, the debtors converted their case to chapter 7. The chapter 7 trustee requested turnover of the inherited land. In affirming the bankruptcy court's order requiring the debtors to turn over the inherited land, the United States Court of Appeals for the Seventh Circuit held the land became

---

[38]    H.R. Rep. No. 103-835, at 57 (1994), *as reprinted in* 1994 U.S.C.C.A.N. 3340, 3366.

[39]    *In re Lybrook*, 951 F.2d 136, 137 (7th Cir. 1991) (explaining because the debtors inherited the property more than 180 days after the petition date § 541(a)(5)(A) did not apply).

part of the debtors' chapter 13 estate. The Seventh Circuit Court of Appeals applied

§ 1306(a)(1), which provides property acquired after the case's commencement but

before the case is closed, dismissed, or converted belongs to the estate. The Seventh

Circuit Court of Appeals held that because the land became estate property during the

chapter 13 case, the land also belonged to the chapter 7 estate. The court explained, "a

rule of once in, always in is necessary to discourage" debtors from filing a chapter 13

case, holding creditors at bay, and converting to chapter 7 to retain any property acquired

postpetition.[40]

In re Bobroff involved a chapter 7 case converted to a chapter 13 and later

reconverted to a chapter 7.[41] While still under chapter 13 but before the second

conversion to chapter 7, the debtor accrued several tort causes of action. The United

States Court of Appeals for the Third Circuit considered whether the causes of action

were property of the chapter 7 estate after the second conversion. Although the Third

Circuit Court of Appeals held the causes of action were not property of the chapter 7

estate, it did so on the basis that the debtor was not entitled to convert his case to chapter

13. The Third Circuit considered the conversion to chapter 13 void *ab initio*. As a result,

the purported conversion to chapter 13 never legally occurred and the tort causes of

action never became property of the estate under § 1306. The Third Circuit explained,

"[i]f debtors must take the risk that property acquired during the course of an attempt at

repayment will have to be liquidated for the benefit of creditors if chapter 13 proves

---

[40]     *Id.* at 138-39.
[41]     *Bobroff v. Continental Bank (In re Bobroff)*, 766 F.2d 797, 803 (3d Cir. 1985).

unavailing, the incentive to give chapter 13—which must be voluntary—a try will be greatly diminished."[42]

Ignoring the unique facts in *Bobroff*, the House Report adopts the Third Circuit Court of Appeals' analysis of the Bankruptcy Code's policy goals, which favored encouraging debtors to file a chapter 13 over chapter 7, or repayment over liquidation. By adopting the reasoning applied in *Bobroff* over *Lybrook*, the House Report suggests the policy goals of § 348(f) should not disincentivize filing a chapter 13 case by penalizing debtors should the case convert to chapter 7. The Bankruptcy Court's decision advances these policy goals.

### c. The Bankruptcy Estate's Interest in Equity Above Secured Claims is Determined on the Petition Date, not the Conversion Date

When legislative history aids the Court in deriving congressional intent, such history "may not be used to support a construction that adds to or takes from the significance of the words employed."[43] Courts considering § 348(f)'s legislative history conclude House Report 103-835 "is highly instructive" when determining the estate's interest in equity amassed during the pendency of a chapter 13.[44] The majority of those courts hold postpetition appreciation in value of real property does not flow into a chapter 7 estate upon conversion.[45]

---

[42]     *Id.* at 803.

[43]     *United States v. Missouri Pac. R.R. Co.*, 278 U.S. 269, 278 (1929) (citing multiple sources).

[44]     *Warren v. Peterson*, 298 B.R. 322, 326 n.1 (N.D. Ill. 2003).

[45]     *Bargeski v. Rose*, No. RWT 05-0962, 2006 WL 1238742 (D. Md. Mar. 31, 2006) (unpublished), *aff'd*, 242 F. App'x 945 (4th Cir. 2007); *Pisculli v. T.S. Haulers, Inc. (In*

14

The House Report is a "sufficiently specific, clear and uniform . . . indicator of intent"[46] to suggest Congress intended to encourage debtors to proceed with a chapter 13 filing without being punished should they later convert to chapter 7. Furthermore, interpreting § 348(f)(1)(A) in this manner does not contradict or otherwise impair other provisions of the Bankruptcy Code. Rather, such a reading complements other Code sections.

The arguments advanced by the Trustee are problematic. Were we to adopt the Trustee's interpretation of § 348(f)(1)(A), our decision would all but write § 348(f)(2) out of the Bankruptcy Code.[47] Section 348(f)(2) states, "[i]f the debtor converts a case under chapter 13 . . . to a case under another chapter under this title in bad faith, the property of the estate in the converted case shall consist of the property of the estate as of the date of conversion."[48] Thus, § 348(f)(2) "penalizes bad-faith debtors by making their postpetition wages [and assets] available for liquidation and distribution to creditors."[49] If Congress intended for postpetition assets to be property of the estate upon conversion from a chapter 13 case without exception, § 348(f)(2) could not punish debtors for converting a

---

re Pisculli), 426 B.R. 52, 63 (E.D.N.Y. 2010), aff'd, 408 F. App'x 477 (2d Cir. 2011); *In re Sparks*, 379 B.R. 178 (Bankr. M.D. Fla. 2006); *In re Niles*, 342 B.R. 72 (Bankr. D. Ariz. 2006); *Warren v. Peterson*, 298 B.R. at 322; *In re Doherty*, 229 B.R. 461 (Bankr. E.D. Wash. 1999).

[46] *Miller v. Comm'r of Internal Revenue*, 836 F.2d 1274, 1282 (10th Cir. 1988).

[47] *Renewable Fuels Assoc. v. U.S. Envtl. Prot. Agency*, 948 F.3d 1206, 1243 (10th Cir. 2020) (quoting *Rubin v. Islamic Republic of Iran*, 138 S.Ct. 816, 824 (2018) ("A statute generally should be interpreted 'so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant.'").

[48] 11 U.S.C. § 348(f)(2).

[49] *Harris v. Viegelahn*, 575 U.S. 510, 135 S.Ct. 1829, 1838 (2015).

case in bad faith.[50] As such, the Trustee's interpretation is not in accord with other provisions of the Bankruptcy Code.

Other cases interpreting § 348(f)(1)(A) support the Bankruptcy Court's decision. For instance, the Supreme Court interprets § 348(f)(1)(A) as removing a chapter 13 debtor's postpetition wages from the chapter 7 estate upon conversion and requiring any funds held by a chapter 13 trustee on the date of conversion be returned to the debtor instead of distributed to creditors.[51] This interpretation leads us to believe that any equity established in a home through payments made from a debtor's postpetition income, so-called "paydown" cases, would also not belong to the converted chapter 7 estate. The House Report expressly addresses the paydown case, explaining including equity resulting from the decrease in secured debt in a converted chapter 7 estate would dissuade debtors from attempting a chapter 13.[52]

The Trustee argues paydown cases are distinguishable from the case where debtors obtain equity through appreciation in value because debtors are not deprived of equity created by their own efforts. In turn, the Trustee argues including the proceeds derived from the sale of estate property does not penalize debtors for giving chapter 13 a

---

[50]    *See United States Tr. v. Standiferd (In re Standiferd)*, No. 07-1076, 2008 WL 5273690, at *6 (Bankr. D.N.M. Dec. 17, 2008), *aff'd* 641 F.3d 1209 (10th Cir. 2011) (noting that postpetition appreciation in value becomes property of the bankruptcy estate under § 348(f)(2) only when the conversion to chapter 7 is in bad faith).

[51]    *Harris v. Viegelahn*, 135 S.Ct. at 1835.

[52]    H.R. Rep. No. 103-835, at 57 (1994), *as reprinted in* 1994 U.S.C.C.A.N. 3340, 3366 (explaining a debtor that obtained $10,000 in equity by making $10,000 in mortgage payments could potentially lose property if a chapter 7 trustee pursued the equity upon conversion).

try. The Trustee's argument ignores the primary disincentive in a case such as this: the potential that the debtor's residence is liquidated to distribute nonexempt equity. Had the Debtors not already sold their Residence before converting the case, the Trustee would likely attempt to sell the home based on the nonexempt equity. It is safe to say few debtors would appreciate the prospect of having their home sold out from under them if a chapter 13 does not pan out. Second, for many debtors, a residence is the only investment asset in their portfolios. The prospect of losing that investment is what drives many debtors to seek bankruptcy protection and would serve as a disincentive to attempting a chapter 13.

There is a pragmatic aspect to this case that the Bankruptcy Court recognized and that should not be ignored.[53] The parties have served this case up neatly wrapped and tied in a bow: they have stipulated that the Residence was worth $396,606 on the petition date, sold for $520,000 some two years later, and that the difference in price was entirely attributable to market forces. The Trustee uses the clean nature of these facts to argue that he only seeks appreciation due to market value. The next case, and, indeed, the vast majority of cases, are unlikely to be so pristine. What is the next court to do when a debtor has remodeled a home? Or repainted? Or did any of the myriad of things real estate agents advise to make a house more attractive? In those cases, how is the bankruptcy court to determine what amount of increased value is due to the effort of the

---

[53] Turnover Order at 10, *in* Appellant's App. at 230 (discussing who—the debtor or the trustee—rightfully benefits from equity generated through renovation and market upticks).

debtor, and how much is due to market forces? As a trial court judge, I do not relish the prospect of making such determinations and believe they will be largely unworkable and highly subjective.

The legislative history to § 541 is helpful in understanding the congressional intent behind the amendment to § 348. The Senate Committee on the Judiciary's report states,

> All property of the debtor becomes property of the estate, but the debtor is permitted to exempt certain property from property of the estate . . . . Property may be exempted even if it is subject to a lien, but only the unencumbered portion of the property is to be counted in computing the "value" of the property for the purposes of exemption.[54]

The Senate's report explains the process for calculating a debtor's exemption in property unencumbered by a lien, which involves assessing equity as of the petition date. Any equity above the federal or state exemption amount is nonexempt property. As it is well established that "[e]xemption rights are determinable as of the time of the bankruptcy filing," the estate's interest in nonexempt equity may also easily be determined as of the petition date.[55]

The Trustee cites several cases for the proposition that in a case initially filed under chapter 7, postpetition appreciation in value belongs to the estate.[56] However, the Trustee cites no binding authority and this Court is unable to locate any such precedent. Although the Bankruptcy Court admits postpetition appreciation becomes property of the

---

[54]     S. Rep. 95-989, at 75-76 (1978) as reprinted in 1978 U.S.C.C.A.N. 5787, 5861-62.
[55]     *Mansell v. Carrol*, 379 F.2d 682, 684 (10th Cir. 1967). *See also In re Robinson*, 295 B.R. 147, 153 (10th Cir. BAP 2003); *In re Lampe*, 278 B.R. 205, 210 (10th Cir. BAP 2002), *aff'd*, 331 F.3d 750 (10th Cir. 2003).
[56]     Appellant's Br. 11-13.

estate in a case initially filed under chapter 7, the Bankruptcy Court distinguished such a case. The Bankruptcy Court explained, "in a typical chapter 7 case, the trustee will not have the opportunity to realize significant postpetition increases in home equity due to either prompt closure of the case or the debtor's filing of a timely motion to abandon."[57] We agree with the Bankruptcy Court's analysis.

## IV.    Conclusion

The Bankruptcy Code provides that property of the estate upon converting from chapter 13 to other chapters consists of property of the estate as of the date of the original petition. However, neither § 348(f) nor § 541(a) clearly delineate a debtor's interest in the postpetition appreciation of a homestead. Interpreting congressional intent as incentivizing chapter 13 repayment and following the guidance of many other courts that have reviewed this issue, we hold any postpetition appreciation in the value of the debtor's prepetition property—including postpetition appreciation of a homestead— belongs to the debtor and does not become property of the estate upon conversion to chapter 7. Accordingly, we AFFIRM the Turnover Order.

---

[57] Turnover Order at 11, *in* Appellant's App. at 231.